ORIGINAL

## CIVIL RIGHTS COMPLAINT
## 42 U.S.C.S. SECTION 1983

**FILED**
IN CLERKS OFFICE
US DISTRICT COURT E.D.N.Y.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------

TROY D. BENNETT

        Plaintiff,

CITY OF NEW YORK ET.AL.,
MAYOR BILL BLASIO,
COMMISSIONER OF POLICE WILLIAM BRATON,
PRECIENT 71 ET.AL.,
DISTRICT ATTORNEY KENNETH P. THOMPSON,
ASSISTANT DISTRICT ATTORNEY M. PEMBERTON,
ASSISTANT DISTRICT ATTORNEY P. BARNES,
SERGEANT LARRY MEYERS #5284,
SEREGEANT MARRAA BARBEE LEBOUR 71 PCT,
SEREGEANT VIGILANCE 71 PCT,
SEREGEANT COMAS 71 PCT,
SEREGEANT LOCK WAINE 71 PCT,
SEREGEANT THALL 71 PCT,
SEREGEANT CHRISTOPHER MARROW 71 PCT,
POLICE OFFICER KRYSTAL CXLASS #14630,
POLICE OFFICER REID ASTRIDA 71 PCT,
POLICE OFFICER NEIL WILLIAMS #3768,
POLICE OFICER FRITZ ROY VIGILANCE #4583,
POLICE OFFICER JAMES J. COFFEY 71 PCT,
POLICE OFFICER CLAGG HOLDER 71 PCT,
POLICE OFFICER GRATEROL DAVTI 1761,
POLICE OFFICER LANGLEY 71 PCT,
POLICE OFFICER GILBERT CASTILLO 71 PCT,
POLICE OFFICER SEAN NEEDHAM 71 PCT,
POLICE OFFICER JAMIESON 71 PCT,
POLICE OFFICER YING 71 PCT,
COUNSEL AT LAW SONIA TATE-COUSIN'S ESQ,
ENROY CLARKE,
BROOKLYN DETENTION CENTER ET.AL,
DEPARTMENT OF CORRECTIONS ET.AL,
COMMISSIONER OF CORRECTIONS JOSEPH PONTE,
CORRECTION OFFICER BROWN,
CAPTIAN GIVENS # 1424,
OTIS BONTUN CORRECTION CENTER ET.AL.

        DEFENDANTS.

-------------------------------------

**CV16- 6653**

JURY TRIAL ___ AND

42 U.S.C.S. §§ 1981,
1983,1985,1986,1987,
1988, 18 U.S.C.S. §§
241,242,1001; U.S.
CONST. AMENDS. 1,4,
5,6,8,9,13,&14SEC.1;
CIVIL RIGHTS ACT 1871.

MATSUMOTO, J.

KUO, M.J.

This proceedings is brought in the form of forma pauperis pursuant to 28 U.S.C.S. Section 1915 because plaintiff is incarcerate, unable to pay any fees at the present moment.See Affidavit Statement Exhibit _____.

Pursuant to the Prison Litigation Reform Act ("PLRA") 42 U.S.C.S. Section 1997e(a), plaintiff exhausted all Administrative Remedies including Grievance procedures due to his confinement at the Department of correction where partial of this claims rises. See Exhibit _____.

Plaintiff hereby respectfully move for the entry of preliminary injunction against all defendants pursuant to Rule 65 of the F.R.C.P. enjoining and restraining the above defendants, their agent employees, subordinates and successors and all persons in active concert, pending final disposition of this action.

# THE UNITED STATES CONSTITUTION

## The Constitution of the United States

Note: The following text is a transcription of the first ten amendments to the Constitution in their original form. These amendments were ratified December 15, 1791, and form what is known as the "Bill of Rights."

## Amendment I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## Amendment II

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

## Amendment III

No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

## Amendment IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## Amendment V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## Amendment VI

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

## Amendment VII

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

## Amendment VIII

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

## Amendment IX

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

## Amendment X

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

## Amendment XI

*Passed by Congress March 4, 1794. Ratified February 7, 1795.*

Note: Article III, section 2, of the Constitution was modified by amendment 11.

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

## Amendment XII

*Passed by Congress December 9, 1803. Ratified June 15, 1804.*

Note: A portion of Article II, section 1 of the Constitution was superseded by the 12th amendment.

The Electors shall meet in their respective states and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate; -- The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted; -- The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice. And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President. -- The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President of the United States.

*Superseded by section 3 of the 20th amendment.

## Amendment XIII

*Passed by Congress January 31, 1865. Ratified December 6, 1865.*

Note: A portion of Article IV, section 2, of the Constitution was superseded by the 13th amendment.

Section 1.
Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Section 2.
Congress shall have power to enforce this article by appropriate legislation.

## Amendment XIV
*Passed by Congress June 13, 1866. Ratified July 9, 1868.*

Note: Article I, section 2, of the Constitution was modified by section 2 of the 14th amendment.

### Section 1.
All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

### Section 2.
Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age,* and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

### Section 3.
No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

### Section 4.
The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

### Section 5.
The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

*Changed by section 1 of the 26th amendment.*

## Amendment XV
*Passed by Congress February 26, 1869. Ratified February 3, 1870.*

### Section 1.
The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude--

### Section 2.
The Congress shall have the power to enforce this article by appropriate legislation.

## Amendment XVI
*Passed by Congress July 2, 1909. Ratified February 3, 1913.*
Note: Article I, section 9, of the Constitution was modified by amendment 16.

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

## Amendment XVII
*Passed by Congress May 13, 1912. Ratified April 8, 1913.*

Note: Article I, section 3, of the Constitution was modified by the 17th amendment.

## § 1915.  Proceedings in forma pauperis

(a) (1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

(3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

(b) (1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

(c) Upon the filing of an affidavit in accordance with subsections (a) and (b) and the prepayment of any partial filing fee as may be required under subsection (b), the court may direct payment by the United States of the expenses of (1) printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court; (2) preparing a transcript of proceedings before a United States magistrate [United States magistrate judge] in any civil or criminal case, if such transcript is required by the district court, in the case of proceedings conducted under section 636(b) of this title [28 USCS § 636 (b)] or under section 3401(b) of title 18, United States Code; and (3) printing the record on appeal if such printing is required by the appellate court, in the case of proceedings conducted pursuant to section 636(c) of this title [28 USCS § 636(c)]. Such expenses shall be paid when authorized by the Director of the Administrative Office of the United States Courts.

(d) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

(e) (1) The court may request an attorney to represent any person unable to afford counsel.

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—

(A) the allegation of poverty is untrue; or

(B) the action or appeal—

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

(f) (1) Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

(2) (A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.

(B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2).

(C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(h) As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

## INTRODUCTORY STATEMENT

1.      This is a civil litigation action seeking damages sustained
by plaintiff a citizen of the United States against all defendant's
who knowingly, willfuly, intentionally and voluntarily acted in
concert and conspiracy to violate and deprive plaintiff Troy D.
Bennett common law rights. An action of law to redress the depr-
ivation of plaintiff constitutional and common law rights and laws
of United States and of the State of New York, under the color of
law statue, custom, or usage, of a right, privilege, and immunity
secured to plaintiff arising from false arrest made in bad faith,
prosecution, imprisonment, improperinvestigation in bad faith,
improper searches and seizures in bad faith, trespass, excessive
force in bad faith, deprivation of personal liberty, invasion of
privacy, intentionally submitted false reports, statements to support
and corroborate the fabric cated charges lodged against plaintiff
due to prejudice, bias, discriminattion and deliberate indifference.
All defendant's violates' plaintiff civil rights and deprive him
of rights, privileges, and immunities secured by the constitution
of the United States and of the State of New York to the due process
and equal protection clause due to the      of New York unreasonable
acts and conducts of their employee's, supervising officer respon-
sible for meaningful conduct, assure of proper trainning implementa-
tion of meaningful procedures to discourage lawless official condct.
As a result, plaintiff suffered and will continue to suffer pains
from psychological harm and damage, mental distress and angush,
stress, humiliation, embarrassment, fear, defamation of his chara-
cter, constitutional injury, and his reputation, financial loss,
family ties loss, and from then until now, plaintiff will continue
to suffer in the future due to the unreasonable and unconstitutional
acts and conducts of all defendant's which is sued as a person
individually and oficially under 42 U.S.C.S. Sections 1983; 1981;
1985; 1986; 1987; 1988; 18 U.S.C.S. Secs. 241; 241; 1001
and US & State Constitution.

7.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C.S. §§ 1981; 1983; 1985; 1986; 1987; 1988; 18 USCS §§ 241; 242; 1001 and the First, Fourth, Fifth, Sixth, Eight, Ninth, Thirteenth, and Fourteenth Amendments to the United states Constitutions and it laws and pursuant to the Civil Rights Act of 1871 et.al..

3.     The jurisdiction of this court predicated on 28 U.S.C.S. §§ 1343(3) & (4); 1341(3) & (3); 1331, and the aforementioned constitutional and statutory provisions. Plaintiff further invokes supplemewntal jurisdiction of this court to hear and decide claims arising out of state laws and constitution; Art. I §§ 1;5;6;11;.

## PARTIES

4.     Plaintiff Troy D. Bennett : a resident of the state of New York, and at all times relevant to the allegations of this complaint a citizen of United States. Plaintiff is presently incarcerated at Rikers Island            Hazen Street East Elmhurst New York 11370 and would also like any mailing to go to the address.

5.     At all times relevant hereto, all defendant's deprived plaintiff of some right, privileges or immunities secured by the United States and the State of New York Constitution and the laws of the State of New York and of United States, and pursuant Civil and Common law rights of 1871.

6.     During all times mentioned herein, all defendant's acted under color of any law, state law, statute, oridance, regulation, custom, usage or policy of United States and the State of New York. Defendant's knowingly, willfuly and intentionallty subject plaintiff

8.

to the deprivation of any rights,privileges, or immunities secured or protected by the constitution and laws of the united States and of the State of New York.(18 U.S.S.C.S. Sec. 242), in violation.

7.    During all times mentioned, all defendant's conspire to injure, oppress, threaten and intimidate and to force plaintiff a resident of the State of New York, the free exercise of enjoyment of any right or privilege secured to him by the constitution and laws of the United States and of the State of new York. (18 U.S.C.S. Section 241), in violation. (US & NY Const.)

8.    During all times mentioned, all defendant's impair plaintiff of equal rights under the law to give evidence, testify and to confront witness, not to be discriminated, or bias, or prejudice or deliberate indiffrence against plaintiff, but for him to enjoy the full and equal benifits of all laws and proceedings for the security of persons and property. (18 U.S.C.S. Sections 241;242;1001; 42 U.S.C.S. Sections 1981(a)(c);1983)(US & NY Const.)

9.    During all times mentioned, all defendant's conspire to interfere with plaintiff civil and common law rights by obstructing justice deter him,by force, intimidation and threating him to witness in court and from attending such court, testifying to matters pending against him, freely, fully and truthfully, for the purpose of impeding hindering, obstructing and defeating him in any manner, the due course of justice with the intention to deny plaintif the equal protection of the laws, to injure him or his property for lawfully enforcing, attempting to enforce,the right of him to the equal protection of the laws of United States and the State of New York. (42 U.S.C.S. Sections 1983; 1985§2) (Civil Rights Act 1871)(NY Civil Rights Law Art. 2).(U.S. & N.Y. Constitution.).

10.    During all times mentioned,all defendant's neglect to prevent the act of conspiracy willfully, but knowingly and intentionally having knowledge of the wrongs conspired against plaintiff about to

9.

be commited, and having power. to prevent or aid in preventing the
commission of the wrong, neglects or refuses so to do, but allowed
such wrongful act to be committed caused plaintiff to be injured
and damage from such wrongful act, which such person by reasonable
diligence could have prevented, but intentionally furtherance such
acts of conspiracy to willfully deprived plaintiff of rights,
privileges and immunities secured to plaintiff by the United States
Constitution and New York and the laws. (42 U.S.C.S. Sections 1983;
1985;1986) (18 U.S.C.S. Sections 241; 242; 1001);(US & NY Const.)

11.    During all times mentioned, all defendant's conspire to
deprive plaintiff of some rights,privileges or immunities secured
by the United States and the State of new York constitution and of
the laws to United States and of the State of New York, for the
purpose of depriving, either directly or indirectly the equal pro-
tection of the laws, for the purpose of preventing or hindering
by force, intimidation by depriving him from exercising any right
privileges or   immunities. (  42 U.S.C.S. 1983;1985(3);Civil Rights
Act 1871;(US & NY Const.).

12.    During all times    mentioned, all defendant's acted ind-
ividually and in concert with others, under pretense and color of
law, state law, and his official capacity but the acts were beyodd
the scope of their jurisdiction and without authorization of law
and in abuse of their powers,and each defendant's acted willfully,
knowingly,and with specific intent to deprive plaintiff of right
to freedom from unlawful arrest, detention and imprisonment, all
which are secured by the First, Third, Fourth, Fifth,Sixth, Eight,
Ninth, and Fourteenth amendments to the Constitution of *United States*
and 42 U.S.C.S. Sections 1981;1983;1985;1986;1988. and of the State
of New York Constitution Art. 1 Sec. 1;5,6; 8; 11; 12;.

10,

13.      During all times mentioned herein, all defendant's and each of them are sued as a person, acted seperately and in concett individually and in their official capacity, purposelly, wilfully, knowingly, intentionally and negligently with specific intent to discrimination of rights and privileges with prejudice, bias and acts of deliberate indifference to reach a mutal understanding to undertake a course of conduct that violated plaintiff common law and civil liberties and constitutional rights, privileges and imm- unities to the due process, substantive and procedural secured to him to wit:

a. The defendant's agreed and acted with force, threat, manipulation, intimidation, fabricated evidence with inconsistent information and statement to violate plaintiff constitutional and statutory rights and privileges tricking him into illegal waivers, subject him                      malicious prosecuting him with excesive confinement injuring him in the process.

b. The defendant's agreed and acted to intentionally and purposefully fabricated false information's and statement arresting, detained and imprisoned plaintiff as aforedescribed.

c. The defendant's agreed and acted to intentionally to use false data and information's to fabricate the charges against plaintiff and to contrive a conviction as aforedescribed.

ab The defendant's agreed and acted negligentrly and re- cklessly conducting improper investigation in arresting and pros- ecuting plaintiff in bad faith failing to interview witnesses, to take into account thrutfull facts which they knew, probable cause, failure to train employees and the preparation of groundless reports and affidavits with incomplete, unsupported evidence as aforedescribed.

e. The defendant's agreed and acted to intentionally conduct a warrantless search and arrest on plaintiff based on a

11.

facially defective warrant prosecuting him and confine him with
an excessive sentence, as aforedescribed.

      f. The defendant's agreed and acted to intentionally and
purposefully harrass, force, threated, oppress, intimidate and
coharse plaintiff, tricking him into waiving his statutory rights,
denying of a state created right, a constitutional
protection, rights privileges and immunites to appear and speak
in his own behalf, give testimony, to introduce letters and docu-
ments, present witnesses give relevant information, gave evidence
and the right to confront witnesses and adverse witnesses as afore-
described.

      g. The defendants agreed and acted to intentionally and
purposefully submit false reports, informations, statements, test-
imony to support and corroborate the fabric cated charges lodged
against plaintiff

      h. The defendant's agreed and acted to intentionally and
purposefully practice negligent and misconduct acts in failing to
properly discipline, restrict, and control employees, including
defendant's known to be irresponsible in their dealings with citi-
zens of the community and their ability to be reponsible to follow
departmental and constitutional procedures and policies in arrest,
representation, prosesution, confinement, medical care, sentencing
and the proper conditions in handling prisoners in intake as afore-
described.

      i. The supervision defendant's agreed and acted to inten-
tionally and purposefully took  no steps to train the employees to
correct their abuse of authority or to discourage their unlawful
use of authority, including the failure to train and to instruct
them in applicable provisions of the State and Federal constitutional
law with proper prudent use of force, threat,,arrest, investigation,

searches, seizure, state law, prosecution and the use of valid evidence as aforedescribed.

j. The supervision defendant's agreed and acted intentionally and purposefully in failing to take adequate precautions in the hiring, promotion, and rentention of police personel, court personel, Corrections(DOC) personel. Failing to establish and/or assure the functiong of a bona fide and meaningful departmental system for dealing with complaint of police officers, corection officers, prosecutors and attorneys for their miscanduct and reckless behavior and acts and conduct, but instead responding to such complaints with bureaucratic power and officiale - denials calculated to mislead the public, this conduct also constitutes gross negligence under state law.

k. The defendant's agreed and acted to intentionally and purposefully And wrongfully Arrest plaintiff A unlawfully Seize And imprison him with out A warrant As Aforedescribed.

l. The defendant's agreed and acted to intentionally and purposefully subject plaintiff to Force in bad faith in Arresting plaintiff Troy D. BENNETT with out A grand jury testimony By hiding plaintiff in holding Cell.

M. Purposefully Assaulting plaintiff in Subjecting plaintiff to False Arrest False Imprisonment And Maliciously prosecuting plaintiff denying him of A State Created Fight to Appear And Testify due to Counsel inmiconduct And Unreasonable Representation with Out Cause of justfication defedants was Violating plaintiff Right. Under the law and Constitution of the United State

13.

First, Fourth, Fifth, Sixth, Ninth, Fourtheenth.
Amendment And his Rights Under the Constitution.
And the laws of the State of New York As AforedeScribed
    N. Purposefully Cause Plaintiff to be physicAL
Assault by other inmate due to D.O.C. Employee
Neglgent the deny of Medical As Aforedescribed

14.      As a direct and proximate result of the above described
unlawful, unreasonable, reckless and negligent and malicious acts
of defendant's City of new York employees, police officers, corr-
ection officers, assistant district attorney and their supervision
officers, all committed under color of their authority, and while
acting in that capacity, caused plaintiff to suffer grievous bodily
harm, emotional damage, cruel and unusual punishment, nervous shock,
mental and psychological disorder, distraction, Insomina, injuries
to the back, waist, unable to cope with reality, restlessness, flas-
hback, shock of the conscience, failing to recognize the difference
between right and wrong, mental contradiction, chronic fatigueness,
abstract thinking, mental angush, greatly humiliated, injured in
his reputation, became sick, sore and mostly disabled and will suff-
great pains now and will continue to suffer in the future, all of
which is in violation of his rights under the laws and Constitution
of the United States and of the State of New York, in particular
the First, Fourth, Fifth, Sixth, Eight, Ninth, Thirteenth and
Fourtheenth amendments and 42 U.S.C.S. and §§ 1981, 1983, 1985, 1986,
1987, and 1988 and 18 U.N.S.C.S. and §§ 241, 242, 1001 and NYS
constitution Article 1 §§ 1, 5,6,8,11,12,14 and Civil Rights Act
1871 Et.Al. to the common law protection.

14.

15.        As a further result of the above described acts, plaintiff
was deprived of his rights and immunities and
privileges secured to him under the Constitution and laws of the
United States and the State of new York including, but not limited
to his rights under the Fourteenth amendment to be secure in his
person, to be free from punishment without due process, and to the
equal protection of the laws, rights under the First amendments to
the freedom of speech, rights under the Fourth amendments to be
secure in his person against unreasonable searches and seizures,
rights under the Fifth amendment Not to be held for an infamous
crime, nor put in jeppardy of life or limb; nor be deprived of
life, liberty, or property, without the due process of law, rights
under the Sixth amendments to a speedy trial, to be confronted with
the witnesses against him; to have compulsory process for obtaining
witnesses in his favor; to the assistance of Counsel for his def-
ence and to understand the nature and to be informed of the cause
of the accusation, rights under the Eight amendments to be free
from cruel and unusual punishment, and rights under the Ninth amen-
dment to family integerety, privacy, and rights under the Thirte-
eenth amendments of certain rights note to be denied but to be re-
tained, and rights under the common law rights and of the New York
Constitution and of new york Civil Law Rights.

16.        The defendant City of new York is a municipal corporation
within the State of New York and at all times relevant hereto, emp-
loyed the other defendants, mayor, police officers, correction off-
icers, ADA, comptroller and their supervision official's.

17.        The defendant Mayor of the City of new York Bill Blasio is
employed by the City and elected by the people to adequately hire,
appoint, train, supervise, disipline or in any other way control
the behavior  of their subordinate defendants to enforce the laws
of the State of new york and the regulations of the City of New
York in execcising of their police function, correction officers
function, ADA functions is evidence of the reckless lack of cautious

15.

regard for the rights of the public including plaintiff and exhib-
ited a lack of that degree of due care which prudent and reasona
individuals would show in executing the duties of Mayor and of the
Police Commissioner, Captian           Commissioner of Correction
and the district attorney office of new York County, and such act
was carried out willfully, wantonly, maliciously and with such re-
ckless disregard for the consequences as to display a conscious
disregard for the & dangers of harm and injury to the citizens of
New York, including plaintiff.

18.     The defendant Commissioner of Police William Braton is
employed by the City of new York Police department. At all times
relevant, he was acting as the commissioner of police as the comm-
anding officer of defendant's police officer and was responsible
for their training, supervision, and conduct. He was also respon-
sible by law for enforcing the regulations of the City of new York
Police Department and for ensuring that New York County police per-
sonnel obey the laws of the State of new York and of the United
States. At all relevant times, he was acting in such capacity as
the agent, servant, and employee of the defendant      of New York.,
He is sued individually and in his official capacity.

19.     The defendant District Attorney            is appointed
as the Attorney for the county of            and was responsible for
the ADA training, supervision, and conduct, and also responsible
by law for enforcing the regulations of the County District Attorney
Office ensuring that ADA personnel obey the laws of the State ofNew
York and of the United States. At all relevant times, he was acting
in such capacity as the agent, servant, and employee of the defe-
ndant County of New York District Attorney Office. He is sued in-
dividually and in his official capacity.

20.     The defendant Joseph Ponte was dully appointed Commissioner
of the City of New York Depart.of Correction. As such he was the
commanding officer of defendants                     and the

16.

and was res-
ponsible for their training, supervision, and conduct. He was also
responsible by law for enforcing the regulations of the City of
New York Corrections Department and for ensuring     that City of
New York Personnel obey the laws of the State of New York and of
the United States. At all times relevant, he was acting as thge
agent, servant, and employee of the defendant City of New York. He
is sued individually and in his official capacity.


21.    At all times relevant hereto, defendant'

employed by the City of New York
Police Department to perform duties in the County of New York and
was assigned to the      Precinct. At all relevant times, h they
was acting is such capacity as the agent, servant, and employee of
defendant City of New York. They are sued, each and every one in-
dividually and in their official capacity.


22.    At all times relevant hereto, defendant's

are Correction
Officers employed by the City of New York Department of Corrections
to perform duties in the City of New York Corrections department
and was assigned to      at Rikers Island jail. At all
relevant times, they was acting in such capacity as the agent,
servant, and employee of defendant's City of New York Department
of Corrections Office of the Commissioner Joseph Ponte. Each and
every defendant's are sued individually and in their official cap-
acity.


23.    At all times relevant hereto, defendant Scott M. Stringer
was a Comptroller employed by the City of New York to perform
duties in the City of New york. At all relevant times, he was act-
ing in such capacity as the agent, servant, and employee of defen-
dant City of new York. He is sued individually and in his official
capacity.


17.

## FACTUAL  ALLEGATIONS.

24.     ON the 27 DAY of February   2015 about
7:00 Am. plaintiff  Troy D. Bennett  exiting his appartment
Suddenly  defendant · Elroy Clarke attacked  plaintiff
pulling  out  a Knife, threating him, to opening
his  apartment  door. He was going to work when
Plaintiff refused  defendant Force  plaintiff to
the  floor robbing him Stabbing his hand plaintiff
Fought  back  defending  him self plaintiff was
Assaulted  And  was  Robed of $167.00

25.     Plaintiff  call Police officer of the 72 st
Police Precent  who  respond  to the scene. officer
of  Badge # 19999  Refused  to wirte  plaintiff complain
or to  write  a report. the officer  Neglect
plaintiff  Statement  leaving  the  scene  making
raciol  remarks  against  plaintiff  when  plaintiff
display his  injurie  And  was  Ask  to Be  taken.
to  hospital.

26.     ON The  27 DAY of February   2015
about  9:30 AM  plaintiff  visded  Kings. county
hospital.          Room. Plaintiff  was  treated
and  excamned  for his injures to his right hand
that was cut by a Knife . the Hospital  reported the
incident  to the Police  He left the hospital the
Next DAY.

27.          ON the 1st day of March 2015 about
9:00 AM plaintiff Revisited hospital Emergency Room
due to excessive pains, bleeding, swelling and
infection. Plaintiff was treated with a cast to his
finger.


28.          ON the 1st day of March 2015 about 11:30Am
Plaintiff left the Hospital going home. While
Plaintiff was walking home defendant's Krystal-
class # 14630 and Larry Meyers # 5284 with out
reasonable cause or probable cause Approached Plaintiff
while he was entering his address, got out of
the police car pointing guns. At Plaintiff screaming
"Freeze before I Shoot."


29.          Plaintiff ask wheather He did something
wrong when defendants did not Respod Plaintiff
contioue walking Suddenly defendants class chase
plaintiff pulling her gun out pointing toward
plaintiff head saying "stop or else I will shoot."
Plaintiff was terrified scared shocked and intimidated
and threatening by acts of defendants Plaintiff
put hand on his head.

30. Plaintiff was physically defaied and. with out permission Suddenly plaintiff was pushed to the ground. by defendant. In doing so defendant's kick plaintiff punched him to the head. while the other defendants's arived. Appruached plaintiff and wrestled. Him to the ground while officer class Applied a choke hold on plaintiff throat temparily cutting off his air supply and causing him extreml alarm pain and injures the act's conducted by defendants done in bad faith was unconstitutional unreasouable. Illegal and in violation of law's of United State and State of New York and their procedure in police.

31 Plaintiff was then handcuffed and transported to the 71st precint although there was no ground for the arrest Search . Defendants fail to read plaintiff arrest rights Plaintiff sustained seriau emotional mental, physical and injures from defendant's act's.

32 That the arrest were made by the defendants without any warrant or other lelgal process directing on authoizing the plaintiff arrest. or legal dentention.

33. That upon    information and belief
the arrests were made pursuint to an
erroneous and falsely report by an unknown
person or Elroy Clarke report did falsely state
defendant Elroy Clarke complained about his injuries
on the 27th Day of Feb     2015 in a fight
with plaintiff although defendant Elroy Clarke do
not live in the building were plaintiff resides
or does he Know any one who reside in
the building. Defendant Elroy Clarke was tresspassing
staging a robbery againts plaintiff

34. That the charge againts plaintiff are
wholly untrue and false.

35. That defendant Elroy Clarke not resided
at the address 332 Autumb R.D. Brooklyn New York.
where plaintiff lives Elroy Clarke was conducting
a robbery.

36. That the defendant's could have oscertained the
falsity of the charge had the defendant's
reasonable diligence in performing their duties and not
neglected to make reasovable and necessary factual
investigation of the

37.     ON the 1st day March 2015 about 12:00 pm plaintiff was handcuffed and pull out of the police car by defendant's at the 71 st precint parking lot. Defendant's Class and Mayers maliciously and without reasouable or probable cause therefor went before a sergeant of the City of New York 71st police precient, a person duly authorized to administer oats, and charged plaintiff with Violation of pelal law 120.05 (3) ; 205.30; 215.52 (1) ; 110-125.25; 120.05 (1) and 215.51 (B5). While defendant's Class and Meyers and other members of the City of New York police Department were acting or attempting to act in defendant City of New York interest, defendants and other police personel there upon proceeded to cause allow, and persvit the herein before described process to be issued and there after filed againts plaintiff at the Brookly Court House. Kings County, City of New York causing restrictions on plaintiff liberty including the necessity of posting unreasonable bail the precint following his arrest.

38. While moveing plaintiff to the holding cell plaintiff continue to asked he had done anything wrong. That he was defendant Elroy Clarke robbed him of money that he was defending himself that you are wrongfully arresting him plaintiff try to explain his side of the story defendants Class and Mayers draged plaintiff to the cell, slapped plaintiff face hit plaintiff on his head with their fist, bang plaintiff head against the wall of the cell, kicked plaintiff, shoving him to the floor plaintiff then was shackle plaintiff during the the Defendents Class and Mayers use force with plaintiff saying to stop hitting him defendant Class continue to punch plaintiff in the back of his head and ribs Class choking plaintiff temporaly cuting of his air Supply Plaintiff fell into a state of unconscioneones plaintiff was physicall attacked and assaulted by defendants class and Mayers Plaintiff Soffer mental injuies to the mind and emotional injuries and psychocigal injurie and medicail problem including body pain great physical mental and emotional pain and distress as result of the defendants acts and conduct Plaintiff was sent to Kings county Hospital for assoult and battery.

39.         The defendants conspired together
to Violated the due process and equal protetion
rights and other civil rights of the plaintiff
and to charge him with a crime which He
did not comment and which the defendants
should have Recoguized he did Not commit


40.         The Investigation conducted by the
defendants and their action taken thereon were
taken in bad faith on in the alternatie Neglgently
and the plaintiff was damaged by reason, by
pain and suffering, both physical and emotional
lass of freedom loss of reputation in community


41

**42.**                    After the aferementioned. arrest
of plaintiff, defendant's City of New York Maliciously
and without reasonble or probable cause there for
went Before a grand jury of the Supreme court
of Brooklyn without affording plaintiff an
opportunity to appear and testify a state created
right but conspired with State appointed defense
counsel to waive plaintiff statutcral rights
persuant to crimminal Procedure Law Article 188.00
and 190.00 Violating plaintiff due process and
constitutional right to speak, to con front with
witness against him and to have compulsory process
for obtaining witiness in his favor not to be depvired
to life liberty or property, and to be informed of
the nature and cause of the accusation but
charged plaintiff with a 5 counts felony indictment
that took over 8 mouths Defendant's and other member
of the city of New York, Police Department and Kings
county District Attorney office and other members
were acting or attempling to act in defendant
City of New York interest defendant's and other
assistant district attorney personal thereupen proceeded
to cause, allow, and pesvit the hereinbefore described
process " to be issued and the after filed against plainiff
at the Brooklyn, Kings County Supreme court causing
restriction on plaintiff Liberty, including the necessity
of posting an unreasonable bail that plaintiff cannot afford.

42.    The wrongful acts of defendants complained of Here in were undertaken maliciously and include with out limitation.

43     A. Intentionally causeing the arrerst of plaintiff when the defendant's knew or should have known there were no grounds nor probable cause for His arrest.

B. The Failure of the defendant's to take into to interview witnesses who subsaniated the plaintiff accounts of his activities.

C. The intent of the defendant's from the beginning of their investigation to charge the plaintiff with a crime.

D. The Failure of the defendant's to take into the account facts which they knew cleared the plaintiff

E. The Failure of defendant's City of New York and the police Department and the District Attorney office to proprly and adequately train the officer in the Police Department and the District Attorney office in investigative techniques and procederes

F. Pre-poratin of groundless reports affidairts and Statemets in order to obtain an arrest against plaintiff.

G.         G. The procurement of groundless charges against plaintiff based upon incomplete unsupported evidence which the defendants knew or should have known was false distorted or fabricated

        H. Plaintiff have been compelled to employ attorney to represent him in this matter.

44.         On or about the 4 day of August 2015 plaintiff was transfer to Brooklyn Detention Center by defendants based on a classification process. Defedants placed plaintiff in a house full of gang members. Plaintiff is not associated with gang members ar is classfied as a gang member As a result of plaintiff placement in a house of gangs, plaintiff was assoulted, battered brutolize by gang member. Plaintiff Sustained pain and suffering injires to the face a broken hose badly pains. damage on his neres, hand and neck pain. plaintiff suffer emotial distress, mental angush depressin nevertness, psychogical shock to the brain from the negligence acts of defendants DOC and officer Brown and other officer who failed to house plaintiff to proper housing unit according to his classfication. Plaintiff Soffered serere and permanent physical, and imental pain and distress. Plaintiff was not charged with any tickets. . See Exhibit. —.

45. Defendants, DOC correction officer Captian and under cold. of law, intentually negligently and with complete and deliberate indifference for Plaintiff is right authorized pemitted and tolerated the custom and practice of the Department of Correction unconstitutional failer to supervice and control the conduct of correction officers.

46. On or about October 2015 plaintiff was transfer to Otis Bontum Correctonol Center Deportment of Correction Ina unit of gang member and Violent offeders. Plaintiff again was placed in anclassfied housing unit on October 15 2015 on asressive cronb approach plaintiff in a closed fist plaintiff in the facial. area. Plaintiff fell to the ground suffering fron pain. Plaintiff sustanrt injuies to the face emotinal distross, physical painis, mental aigush injoress that are permanemt noe to Depevtrat of Correton Captian and corretian neglight acts and conduct in placing inmates to proper housing unit plaintiff suffered from defendant failure to propely train supervice and control the conduct of correction officers. see exhliat ⟶

47. Defendants City of New York, Mayor Department of Correction Commissioner chraged with and responsible for appainting and promoting through the Mayor and Captian the membrers of Deportment of Correction of Otis Bontim Currectenol Center training, instruction, discipliey, central, and, conduct of employes of the City of New York.

## FEDERAL CAUSES OF ACTION

48.     The allegations set forth in paragraphs 1 through    are
incorporated herein by reference.


49.      The hereinabove described actions and omissions, engaged
in under color of state authority by the defendants, including
defendant City of New York,        County Districty Atorney Office,
New York City Police Department, New York City Correction Depart-
ment and                               sued as a person,
responsible because of its authorization, condonation, and ratifi-
cation thereof for the acts of its agents, deprived the plaintiff
of rights secured to him by the Constitution and laws of the United
States and privileges and immunities protected under the due process
and equal protection clause, his first amendment right to freedom
of speech, of expression, his fourth amendment right to be free from
unlawful search and seizure, his fifth amendment right to a valid
charges, life, liberty and happiness, due process, his sixth, ninth,
eight, thirteenth and fourtaeneeth amendmentente rights to due process
of law and equal protection, including the right to be free from
unjustified and excessive force, investigation , · proper medical
care placement in a housing unit timely,                        · and
excessive force utilized by police, correction officers and ADA and
supervisiong  officials, and the right to be free from cruel and
unusual punishment.


## PENDENT CAUSES OF ACTION

50.     The allegations set forth in paragraphs 1 through 47 are
repeated and realleged.


51.     Hereto fore and on or about November.04,2015
plaintiff Troy D. Bennett         caused a writted verified Notce
of Claim to be filed with and served upon the proper officers, agents,
and employees of the defendant's City of New York pursuant to the

statutes in such cases made and provides. A copy of the Notice is annexed hereto as Exhibit         and made a part hereof.

52.   That more than thirty days have elapsed since the service of such Notice of Claim, and adjustment or payment thereof has been neglected or refused.

53.   The acts and conduct hereinbefore alleged constitute false arrest, unlawful or illegal search and imprisonment, assault and battery, medical care denial, exsessive force, extended stay in holding cell, medication refusal, abuse of process, excessive sentence, illegal sentence, prima facie tort, conspiracy tort, gross negligence under the laws of the State of New York. This Court has pendent jurisdiction to hear and adjudicate these claims.

54.   Plaintiff demand compensatory damages against the defendants and each of them, jointly and severally, in the amount of $9,990,000, and they further demand further punitive damages against the defendants, and each of them, jointly and severally in the amount of $7,990,000.00.(Exemplary Damages). Attorney's fees pursuant to 42 U.S.C.S.§ 1988. Enterning a judgement against all defendant's, of $8,990,000.00, and each of them, jointly and severally.

55.   Declaring as unconstitutional the arrest, the search, the

denial of medical care and medication to plaintiff,

56.   Entering a preliminary injunction and permanent restraining and enjoining all defendants from   undertaking, enforcing, maintaining, or adopting any polices, procedures, practices, or acts of stopping or arresting or imprison or
         or in providing proper medical care or medications to inmate in holding cell or dention or or in in investiagation or

in sentensing where enforcement officials have probable cause to believe that citizens of the United States conducting a violation of the laws. Releaseing plaintiff from                City of New York Department of Correction, Commissioner Joseph Pontie where he has authority         until, pending final disposition of this action.

## FIRST CAUSE OF ACTION

57.    Plaintiff repeat, reiterate, and reallege as part of this cause of action each and every allegation contained in paragraphs 1 through 56 inclusive of this complaint with the same force and effect as if fully set forth herein.

58.    That as a result of the trespass, assault, battery,search, seizure, false arrest and illegal imprisonment, denial of medical care and medication, improper investigation, extensive delays in holding cell before placing inmates to housing units violates the corrections policies

                                                                    , plaintiff
Troy D. Bennett   being a citizen of the United States, was subjected to deprivation of his freely exercise rights, privileges, and immunities and to the due process and equal protection clause secured by the Constitution of the United States and the laws of the United States, sustained deprivations of his personal liberty, invasions of his privacy, unlawfull arrest, illegal confinement, and violations of his civil rights, has suffered and will continue to suffer from psychological harm, emotional injury, physical pains, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation, was prevented from attending tb his duties and underwent psychological, emotional, physical amd medical treatment, all to her damages as stated in paragraph 54 a total sum of $26,970,000.00.

## SECOND CAUSE OF ACTION

59.    Plaintiff repeat, reiterate, and ae reallege as part of
this cause of action each and every allegation contained in para-
graphs 1 through 58 inclusive of this complaint with the same fo-
rce and effect as if fully set forth herein.

60.    That as a result of the trespass, assault, battery, un-
reasonable search and seizure, false arrest, illegal imprisonment,
extensive delays in holding cell, denial of medical care, wronofull
improper investigation, and wrongfull
plaintiff Troy D. Bennett being a citizen of the United
States, was subjected to deprivations of his rights, privileges,
and immunities secured by the Constitution of the United States
and the laws of the United States, sustained deprivations of his
privacy and violations of his civil rights, has suffered and will
continue to suffer from mental distress, humilitation, mental
angush, fear, emotional distress, psychological that are protected
under the First, Fourth, Fifth, Sixth, Eight, Ninth, Thirteenth,
and Fourteenth amendments to the United States Constution and
protection under the Civil Rights Act 42 U.S.C.S. §§ 1981, 1983,
1985, 1986, 1987, 1988.

61.    That plaintiff sustained damages as stated in paragraph
58 for a total amount of each and every defendant's totaling the
sum of $26,970,000.00.

## THIRD CAUSE OF ACTION

62..    Plaintiff repeat, reiterate, and reallege as part of this
cause of action each and every allegation contained in paragraphs
1 through 61 inclusive of this comp-laint with the same force and
effect as if fully set forth herein.

63.    The failure of the City of New York suprvision officials,
Commissioners, Captain, Sergeant and Dective and District Attorney

to adequately train, supervise, discipline or in any other way co-
ntrol the behavior of the supervisors and sub-ordinate officers,
the defendant's in the exercise of their authoritive or police fun-
ctions, and their failure to enforce the laws of the State of New
York and the % regulations of their offees or the municipilties
is the evidence of the reckless lack of cautious regard for the
rights of the publis including plaintiff and exhibited a lack of
that degree of due care which prudent and reasonable individuals
would show in executing the duties of Police Commissioner or Mayor
or Correction Commissioner or Captain or District Attorney or
Sergeant or Detective and of the Municiplicaties and that such acts
and conduct was carried out wilfully, wantonly, maliciously and
with such reckless disregard for the consequences as to display a
conscious disregard for the dangers of harm and injury to the cit-
zens of New York City including plantiff and because of the acts
alleged herein, their failure to discipline the defendants and the
continued employment of the defendants present a clear and present
danger to citizens of the City of New York.
sustained injuries resulted from the negligence of defendant's City
of New York in employing and continue to employ without adequate
training and supervision, police officers and assistant district
attorney, correction officers of a violent character, unsuitable
temperament, and insensitive disposition. Each and every defendan's
are sued individualy and seperately for injures and damages inclu-
ding constitutional injury against plaintiff for a total amount of
a total sum of    $26,970,000.00 as stated in paragraph 54 includ-
ing Compensatory and Punitive damages.

64.    Plaintiff demands a preliminary and permanent injunction
preventing defendant City of New York from employing the defendans
and police officers and correction officers, relecing plaintiff
untill the outcome of this case. And a declarattory judgement that
the policies, practices and acts complained are illegal and un-
constitutional.

65.    Plaintiff seeks a criminal sanction for defendant's who subject plaintiff to the deprivation of a freely exercise rights secured under the due process and equal protestion clause to the United State Constitution and the laws of United States pursuant to 18 U.S.C.S. §§ 241, 242, 1001 & U.S. Constitution Amendments 1, 4, 5, 6, 8, 9, 13, & 14 Sec. 1 and  42 U.S.C.S. §§ 1981, 1983, 1985, 1986, 1987, 1988.

## FOURTH CAUSE OF ACTION

66.    The allegations set forth in paragraph 1 through 6 incluive are incoroporated as fully set forth.

67.    Defendant's Police Officers, acting as agents and on behalf of defendant City of New Police Department, within their scope of their employment, wrongfully, maliciously and unlawfully investigate plaintiff case and place plaintiff under arrest, transported him to the precinct where he was confined.

68.    As a proximate result of defendant's unlawful arrest and imprisonment, plaintiff was greatly humiliated, injured and became sick, sore and        , and has suffered great pain and mental anguish all to plaintiff damage in the the total sum of amount as stated in paragraph 54, a total sum of $26,970,000.00

## FIFTH CAUSE OF ACTION

69.    The allegations set forth in paragraphs 1 through 63 inclusive, are incorporated herein as if fully set forth.

70.    Defendant's Correction Officers, acting as agents and on behalf of City of New York Department of Correction        an

        within the e scope of their employment, wrongfully, maliciously and unlawfully

of the Department of Correction law before placing him in a housing
unit and in the process they wilfully and intentionally deprive him
of medical care and treatment and medications causing him to be ex-
treme sick.

71.    As a proximate result of the acts and conduct of defendan's,
plaintiff was greatly sick, suffer from cruel and unusual pains and
punishment, mental angush, emotional and psychological injury. These
defendant's are sued individually and seperately in the total sum
of the amount as stated in paragraph 54, a total sum of $26,970,000.00.
for violation of plaintiff constitutional rights.

## SIXTH CAUSE OF ACTION

72.    The allegations set forth in paragraphs 1 through    inclusive,
are incorporated as fully set forth.

73.    Defendant's ADA           acting as agents and on behlf
of the City of New York County of New York District Attorney Offi
ce, within the scope of his employment, wrongfully, maliciously and
unlawfully cause plaintiff to                  a non arrainment
charge and cause hihm him to be

                                          trick the    court
and plaintiff and department of correction

                              also tricking corrections
to have plaintiff                                    of
the Criminal Procedure Law e and constitutional law. (US Const Amend
1,4,5,6,8,9,13,14) and laws of United States.

74.    As a proximate result of defendant's fraud or unlafull det-
ainment, plaintiff suffered great pains, constitutional injury,mental
angush, emotional distress, pyschological sufering, physical injury
under cruel and unusual punishment without medical care. The defen-
dant is sued individually and seperately as stated in paragraph
54.,a total sum of $26,970,000.00(18 U.S.C.S. §§ 241,242,1001).

## RELIEF REQUESTED

WHEREFORE, Plaintiff _Troy D. Bennett_ demands the following relief jointly and severallt, against all the defendants: All Remidies have Exbausted; No prior law suit filed.

A. Compensatory damages in the amount of $9,990,000.00.

B. Punitive damages in the amount of $7,990,000.00.

C. Additional judgements againt all defendant's in the amountof $8,990,000.00/

D. Attorney's fees pursuant to 42 U.S.C.S. §1988.

E. Entering a preliminary injunction against all defendant's puruasnt to Rule 65 of    F.R.C.R. releasing plaintiff from imprisonment, pending final disposition of this action.

F. Entering a declatory judgement that the polices, practices, and acts and conducts complained of herein are illegal and unconstitutional.

G. Such other and further as this Court deem appropriate under the circumstances.

Resnectfully submitted,

_Troy D. Bennett_



**DISTRICT ATTORNEY**
**KINGS COUNTY**
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

Kenneth P. Thompson
District Attorney

# CRIMINAL PROCEDURE LAW § 190.50 NOTICE TO THE DEFENDANT AND DEFENDANT'S ATTORNEY

Pursuant to Criminal Procedure Law Section 190.50 (5) (a), notice is hereby given that the criminal charges pending against the defendant and upon which he/she has been arraigned will be submitted to the Grand Jury prior to its disposition in the Criminal Court.

If the defendant wishes to exercise the right to appear before the Grand Jury as a witness in his/her own behalf, a written notice, specifying the defendant's name, docket number, an address to which communications may be sent, indicating the desire to testify before the Grand Jury, must be served upon:

> Kenneth P. Thompson
> District Attorney
> GRAND JURY BUREAU
> 350 Jay Street
> Brooklyn, New York 11201
> Attn: Grand Jury Bureau Clerk's Office

Alternatively, this written notice may be faxed to the Grand Jury Bureau at 718- 250 - 2906. The People do not consent to notice by fax to any other telephone number.

**The defendant is scheduled to testify on** 3/5 **(180.80 date).**

The attorney for an incarcerated defendant, who desires to exercise the right to testify before the Grand Jury, is required to appear on the 16th floor at 320 Jay Street prior to 5:00 p.m. to provide such testimony on the above date. Preparation of defendant's testimony before the Grand Jury must be done prior to 5 p.m.

If the defendant is incarcerated and wishes to waive the requirements under C.P.L. § 180.80 and testify on an alternative date, the Grand Jury Bureau must be contacted to determine an alternative date acceptable to the People and within the term of the Grand Jury.

If the defendant is not incarcerated on the above date, be advised that if the defendant does not testify on the above date you will be notified of a future date for the defendant's testimony before the Grand Jury. The notification will be to the defendant's attorney of record who will be given an appointment, on three days notice, of the date and time to appear at the Grand Jury. It is the responsibility of the defendant and his/her attorney to remain in contact so that the appointment can be satisfied. Failure to appear at the date and time of the appointment will be considered a waiver of the defendant's right to testify.

Kenneth P. Thompson
District Attorney, Kings County

Dated: 3/3

CR-7 Rev 1/1/14

# New York State Unified Court System

## WebCrims

## Case Details - Summary

### CASE INFORMATION

Court:    **Kings Supreme Court - Criminal Term**
Case #:    **01707-2015**
Defendant:    **Bennett, Troy**

---

### Defendant

Name:    **Bennett, Troy**
Birth Year:    **1976**
NYSID:    **2226479M**

---

### Incident and Arrest

**Incident**
Date:    **February 27, 2015**
CJTN:    **67032569Q**

**Arrest**
Date & Time:    **March 1, 2015 11:50**
Arrest #:    **K15614631**

**Officer**
Agency:    **NYPD**
Command:    **71**

---

### Attorney Information

**Defense Attorney**
Name:    **Tate-cousins,**
Type:    **Brooklyn Defender Service**
Court Date:    **April 6, 2015**
Court Part:    **85**
Phone:    **000 - 000 - 0000**

**Assistant District Attorney**
No Information on File

---

### Next Appearance

Date:    **June 8, 2015**
Court:    **Kings Supreme Court - Criminal Term**
Judge:    **Murphy, Martin**
Part:    **40**

# New York State Unified Court System

## WebCrims

## Case Details - Charges

### CASE INFORMATION

Court:       Kings Supreme Court - Criminal Term
Case #:      01707-2015
Defendant:   Bennett, Troy

| Charge | Detail | Disposition/Sentence |
|---|---|---|
| PL 120.05 03 | **D Felony, 1 count, Not an arrest charge, Not an arraignment charge** | |
| | Description: *Aslt-2-Int Caus Ph Inj To Off* | |
| | Indictment Count: *5* | |
| | Date Added: *03/17/2015* | |
| PL 205.30 00 | **A Misdemeanor, 1 count, Not an arrest charge, Not an arraignment charge** | |
| | Description: *Resisting Arrest* | |
| | Indictment Count: *6* | |
| | Date Added: *03/17/2015* | |
| PL 215.52 01 | **D Felony, 1 count, Not an arrest charge, Not an arraignment charge** | |
| | Description: *Agg Contempt-violate Op-Injury* | |
| | Indictment Count: *3* | |
| | Date Added: *03/17/2015* | |
| PL 110-125.25 00 **TOP CHARGE** | **B Felony, 1 count, Not an arrest charge, Not an arraignment charge** | |
| | Description: *Attempted Murder - 2nd Deg* | |
| | Indictment Count: *1* | |
| | Date Added: *03/17/2015* | |
| PL 120.05 01 | **D Felony, 1 count, Not an arrest charge, Arraignment charge** | |
| | Description: *Aslt W/Int Caus Serious Ph Inj* | |
| | Indictment Count: *2* | |
| PL 215.51 B5 | **E Felony, 1 count, Not an arrest charge, Not an arraignment charge** | |
| | Description: *Crim Contempt-1st:phy Contact* | |
| | Indictment Count: *4* | |
| | Date Added: *03/17/2015* | |

)

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

THE PEOPLE OF THE STATE OF NEW YORK

STATE OF NEW YORK
COUNTY OF KINGS

v

TROY BENNETT

SERGEANT LARRY MEYERS SHIELD NO.5284, OF 071 COMMAND SAYS THAT ON OR ABOUT MARCH 01,2015 AT APPROXIMATELY 11:50 AM AT 342 RUTLAND ROAD COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 205.30                    RESISTING ARREST

IN THAT THE DEFENDANT DID:

INTENTIONALLY PREVENT OR ATTEMPT TO PREVENT A POLICE OFFICER OR PEACE OFFICER FROM EFFECTING AN AUTHORIZED ARREST OF THE DEFENDANT OR ANOTHER PERSON.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE AS FOLLOWS:

DEPONENT STATES THAT, AT THE ABOVE TIME AND PLACE, WHILE DEPONENT WAS PLACING DEFENDANT UNDER ARREST FOR ARREST NUMBER K15614631. THE DEFENDANT FLAILED DEFENDANT'S ARMS AND KICKED DEFENDANT'S LEGS WHILE THE DEPONENT ATTEMPTED TO PLACE THE DEFENDANT IN HANDCUFFS.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

DATE                SIGNATURE

2015KN012626

Printed 03/02/2015 15:59     K15614831     Arrested: 03/01/2015 11:50

Case 1:16-cv-05386-AM-PK   Document 1   Filed 11/28/16   Page 43 of 84 PageID #: 43

# New York State Unified Court System

## WebCrims

## Case Details - Appearances

**CASE INFORMATION**

Court: **Kings Supreme Court - Criminal Term**
Case #: **01707-2015**
Defendant: **Bennett, Troy**

| Date/ Part | Judge | Calendar Section | Arraignment/ Hearing Type | Court Reporter | Outcome/ Release Status |
|---|---|---|---|---|---|
| 10/26/2015 40 | Murphy, Martin | TRIALS AM | No Type | | |
| 09/10/2015 40 | Murphy, Martin | TRIALS AM | No Type | Delvalle, M | Adjourned - Temporary Order Of Protection Issued Remanded |
| 08/06/2015 40 | Murphy, Martin | TRIALS AM | No Type | Kurowski, | Adjourned - Temporary Order Of Protection Issued Remanded |
| 06/08/2015 40 | Murphy, Martin | TRIALS AM | No Type | Turner-malloy, | Adjourned - Temporary Order Of Protection Issued Remanded |
| 04/06/2015 85 | Gubbay, J | ARRAIGNMENTS | Regular | Adams, D | Pled Not Guilty - Temporary Order Of Protection Issued Remanded |
| 03/17/2015 GRAND JURY | | MISCELLANEOUS | No Type | | True Bill - Temporary Order Of Protection Issued Remanded |

ORI No: NY0230153
Order No:
NYSID No: 05286979M
C/TN No.
Present: Hon Brennan Manolo

At a term of the Supreme
at the Courthouse at (address) 320 Jay Street
Court County of KINGS
State of New York

Criminal Form 2   9/2009

People of the State of New York
-against-

Troy Bennett
Defendant

Date of Birth: 10/3/76

**ORDER OF PROTECTION**
Non-Family OFFENSE – C.P.L. 530.13¹
(Not involving victims of domestic violence)
☐ Youthful Offender (check if applicable)
Part 23  Index/Docket No.
Indictment No., if any: 10898/2011
Charges 12.5 10/120.05A) e.f g 1
(Check one): ☐ Ex parte
☑ Defendant Present in Court

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND
CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR
CONTEMPT OF COURT. IF THIS IS A TEMPORARY ORDER OF PROTECTION AND YOU FAIL TO APPEAR IN
COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND
THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

☐ TEMPORARY ORDER OF PROTECTION. Whereas good cause has been shown for the issuance of a temporary order of
protection [as a condition of ☐ recognizance ☐ release on bail ☐ adjournment in contemplation of dismissal],
☑ ORDER OF PROTECTION. Whereas defendant has been convicted of [specify crime or violation]:
Attempted Assault 2°
And the Court having made a determination in accordance with section 530.13 of the Criminal Procedure Law,
IT IS HEREBY ORDERED that the above-named defendant observe the following conditions of behavior:
(Check applicable paragraphs and subparagraphs):

☑ Stay away from     ☑ a) name(s) of protected person(s) or witness(es)]: Emmy Clarke
and/or from the      ☐ b) home of
                     ☐ c) school of
                     ☐ d) business of
                     ☐ e) place of employment of
                     ☑ f) other

☑ Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other
   means with [specify protected person(s)]:
☑ Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct,
   criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats or any criminal offense or
   interference with the victim or victims of, or designated witnesses to, the alleged offense and such members of the family or
   household of such victim(s) or witness(es) as shall be specifically named [specify]:
☐ Refrain from intentionally injuring or killing without justification the following companion animal(s) (pet(s)) [specify type(s)
   and, if available, name(s)]:
☐ Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not
   limited to, the following:                                        and do not obtain any further guns or other
   firearms. Such surrender shall take place immediately, but no later than [specify date/time]:
☐ Specify other conditions defendant must observe for the purposes of protection:

IT IS FURTHER ORDERED that the above-named Defendant's license to carry, possess, repair, sell or otherwise dispose of a
firearm or firearms, if any, pursuant to Penal Law §400.00, is hereby ☐ suspended or ☐ revoked (note: final order only), and/or ☐ the
Defendant shall remain ineligible to receive a firearm license during   the period of this order. (Check all applicable boxes). NOTE:
If this paragraph is checked, a copy of this form must be sent to: New York State Police, Pistol Permit Section, State Campus
Building #22, 1220 Washington Avenue, Albany, New York 12226-2252.

IT IS FURTHER ORDERED that this order of protection shall remain in force until and including [specify date]: 3/13/20
DATED: 6/13/12

_____
JUDGE / JUSTICE
COURT (COURT SEAL)

☑ Defendant advised in Court of issuance and contents of Order.
☑ Order personally served on Defendant in Court  Troy Bennett
                                                  (Defendant's signature)
☐ Order to be served by other means [specify]:
☐ Warrant issued for Defendant
☐ ADDITIONAL SERVICE INFORMATION: [specify]:

The Criminal Procedure Law provides that presentation of a copy of this order of protection to any police officer or peace officer
acting pursuant to his or her special duties shall authorize, and in some situations may require, such officer to arrest a defendant who
has violated its terms and to bring him or her before the Court to face penalties authorized by law.

Federal law requires that this order must be honored and enforced by state and tribal courts, including courts of a state, the District of
Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an intimate
partner of the protected party and has been or will be afforded reasonable notice and opportunity to be heard in accordance with state
law sufficient to protect that person's rights (18 U.S.C. §§2265, 2266).

It is a federal crime to:
- cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
- buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a
  limited exception for military or law enforcement officers but only while they are on duty); and
- buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related
  crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even has
  expired. (18 U.S. after this Order C. §§922(g)(8), 922(g)(9), 2261, 2261A, 2262).

¹ Use this form for non-family offense orders of protection, issued pursuant to CPL §530.13, that are not issued to protect victims of family offenses, intimate
partners and family and household members and are not entered into the statewide domestic violence registry. See Exec. L. §221-a(1); CPL §§530.11(1), 530.12(1).



# e911 - POLICE DEPARTMENT

NYPD >> Gilbert Castillo >> Home >> >> Request Listing >> Details

| Logout

| TRJ Number | 2015/13714 |
|---|---|
| Technician | Gilbert Castillo |
| Production Date | 2015-03-03-21:02:49.327 |
| Contact Name | Gwen Barnes |
| Contact Email | 911.pilot@brooklynda.org |
| DA Reference | N/A |
| Defendant | TROY BENNETT |
| Index Number | |
| Docket Number | N/A |
| Arrest Number | |
| Comments | |
| Package Size | 8372520 |

| File Name | 911_N/A_1495529592.mp3 |
|---|---|
| Operator Number | 1317 |
| Start Time | 07:27:25 |
| End Time | |
| Duration | 00:01:11 |
| Recorder | CP025 |
| Incident Location | 332 RUTLAND RD |
| Channel Number | A |
| PD Job Number | 03933 |

| File Name | RADTOMSC02.mp3 |
|---|---|
| Operator Number | |
| Start Time | 11:36:19 |
| End Time | 12:44:54 |
| Duration | |
| Recorder | D20-COMB |
| Incident Location | 332 RUTLAND RD |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:

----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

    - against -

IND. # 1707/2015

TROY BENNETT,

        Defendant.

----------------------------------------------------------------X

## MEMORANDUM OF LAW

### I. AN INDICTMENT HAS THREE PURPOSES

An indictment is an accusatory instrument which has three purposes: (1) to provide a defendant with fair notice of any accusation(s) against him so that he be allowed to prepare his defense; (2) to assure that any crime for which a defendant is tried is the same as that intended by the Grand Jury; and (3) to protect a defendant against double jeopardy by setting forth the specific crime or crimes for which he is to be tried (*People v Iannone* 45 NY2d 589, 598; 384 NE2d 656; 412 NYS2d 110 [1978]). To that effect, C.P.L. §200.50 lists all of the components that an indictment *must* contain including the name of the court, the title of the action, the offense(s) committed that the defendant stands accused of, the designated county that the offense(s) was committed, a factual statement asserting facts, supporting every element of the offense charged and the signature of the foreman of the grand jury.

At no point, in C.P.L. §200.50, nor in any other section of the C.P.L., does that statute require that a docket number, arrest number, or any other identifying number associated with the case pre-indictment be included on the indictment. Such numbers do not have any bearing on the charges in the indictment or the evidence presented to the grand jury. In fact, the grand jury

is not apprised of docket numbers as the grand jury number is used to track the case from the presentation to the grand jury through indictment. Furthermore, once a defendant is indicted, the case proceeds under the grand jury number, which becomes the indictment number rather than under any previous identifying number associated with the case. There are often indictments with no previous identifying number, when the case is presented to the grand jury prior to the defendant being placed under arrest. The People, however, have routinely included the previous docket number in the indictment case caption as a matter of convenience, if one exists, to facilitate and assist the tracking of a matter from its original inception through indictment. The included docket numbers allow the people, the defendant and the Courts to ensure that defendants are not simultaneously prosecuted in multiple courts for the same incident.

Here, the Defendant was arrested on March 1, 2015 pertaining to two separate incidents, one being of an assaultive nature against Enroy Clarke, which occurred on February 27, 2015 and the other being for Resisting Arrest, which occurred on March 1, 2015. The separate incidents were assigned separate docket numbers. Prior to presenting the incidents to the grand jury, the people became aware that during the March 1, 2015 incident, Police Officer Krystal Class sustained injuries during her interaction with the defendant. Subsequently, the People presented both incidents to the grand jury under one indictment number, clearly illustrating the people's theory of prosecution and placing the defendant on notice of the accusations against him. When the indictment was filed, however, the People inadvertently included only one docket number in the caption of the indictment, the docket number pertaining to the February 27, 2015 incident with Enroy Clarke, even though evidence was presented to the grand jury regarding both incidents and the defendant was charged with offenses pertaining to both incidents.

## II. THE INDICTMENT CAN BE AMENDED TO INCLUDE THE INDICTMENT NUMBER

C.P.L. §200.70 allows for amendments to be made to indictments, provided that the amendment does not change the theory or theories of prosecution as reflected in the evidence before the grand jury which filed the indictment, and that the amendment does not prejudice the defendant on other merits *(People v Perez* 168 Misc. 2d 162; 636 N.Y.S.2d 562; 1995 N.Y. Misc. LEXIS 620, (1995), *(People v Feliz,* 136 Misc. 2d 701; 519 N.Y.S.2d 290; 1987 N.Y. Misc. LEXIS 2485 (Queens County, 1987)).

Specifically C.P.L. §200.70 states:

" that at any time before or during trial, the court may, upon application of the people and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits. Where the accusatory instrument is a superior court information, such an amendment may be made when it does not tend to prejudice the defendant on the merits. Upon permitting such an amendment, the court must, upon application of the defendant, order any adjournment of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense.

C.P.L. §200.70 goes on to state that an indictment may not be amended in any respect which changes the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed it; nor may an indictment or superior court information be amended for the purpose of curing (a) a failure thereof to charge or state an offense; or (b) legal insufficiency of the factual allegations; or (c) A misjoinder of offenses; or (d) A misjoinder of defendants.

Here, the inadvertent error of failing to add a docket number to the indictment caption clearly does not change the theory or theories of prosecution as reflected in the evidence before

the grand jury which filed the indictment. In fact, the addition of docket number 2015KN012626 would allow the indictment to accurately reflect the second incident that charges in the indictment and evidence before the grand jury pertain to. Although C.P.L. §200.70 allows for errors to be corrected in the charges of the indictment, such as form, time, places, and names of persons, here, the People are not even requesting an amendment to the charges. The amendment is one of a superficial nature in that nothing pertaining to the charges in the indictment would be changed, rather just the docket number would now be associated with the indictment for administrative purposes. The people's request to amend the indictment to include the second docket number is solely for the purposes of accurately tracking the incident and protecting the defendant from simultaneously being prosecuted in more than one court. The charges of the indictment will remain as is and thus there can be no prejudice towards the defendant whatsoever.

## III. THE INDICTMENT MUST BE AMENDED TO INCLUDE THE DOCKET NUMBER AS A MATTER OF LAW

C.P.L. §170.20(1) states that if at any time before entry of a plea to guilty or commencement of a trial of a local criminal court accusatory instrument containing a charge of misdemeanor, an indictment charging the defendant with such misdemeanor is filed in a superior court, the local criminal court is thereby divested of jurisdiction of such misdemeanor charge and all proceedings therein with respect thereto are terminated. The people are not required to serve notice to the defendant or the court that the people are presenting a case originally arraigned in criminal court as a misdemeanor to the grand jury. And therefore, the people are also not required to serve notice to the defendant pursuant to C.P.L.190.50 (*People v. Bouyea* 72 Misc. 2d

35; 660 N.Y.S.2d 657; 1997 N.Y. Misc. LEXIS 236, (Kings County, 1997); *People v Ortiz* 150

Misc. 2d 602; 570 N.Y.S.2d 262; 1991 N.Y. Misc. LEXIS 204 (Kings County, 1991)).

Here, the defendant was arraigned in criminal court on March 3, 2015 on docket number

2015KN012626 which contained a misdemeanor complaint. Although the people subsequently

decided to present the incident to the grand jury with felony charges, the people were under no

obligation to inform the defendant of such. As a matter of law, pursuant to C.P.L §170.20, once

the March 1, 2015 incident was presented to the grand jury, the grand jury indicted the defendant

on charges pertaining to that incident, and said indictment was filed, the jurisdiction of the

March 1, 2015 incident transferred to the Supreme Court, where the indictment was filed, which

is superior to the Criminal Court. The docket number needs to be added to the indictment so that

the court's system can accurately reflect that the docket number is no longer proceeding in

Criminal Court and so that the case can be properly tracked as it proceeds through Supreme

Court, the superior court with jurisdiction.

WHEREFORE, this Court should grant the District Attorney's application for the caption of

the indictment number 1707/2015 to be amended to include docket number 201KN012626.

Dated: June 29, 2015
Brooklyn, New York

Respectfully submitted,

Sasha M. Pemberton
Assistant District Attorney

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:  CRIMINAL TERM – PART 40
--------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

          - against -

**TROY BENNETT,**

                      Defendant.

--------------------------------------------------------------X

**NOTICE OF MOTION TO
AMEND INDICTMENT**

Kings County
**IND. # 1707/2015**

      PLEASE TAKE NOTICE that upon the annexed affirmation of Sasha M. Pemberton, dated June 29, 2015, upon the documents attached to that affirmation, and upon all of the prior proceedings in this case, the People of the State of New York will move this Court in Part 40 of the Supreme Court, 320 Jay Street, Brooklyn, New York, on August 6, 2015 at 9:30 a.m. or as soon thereafter as counsel may be heard, for an order amending indictment number 1707/2015 to include docket number 2015KN012626.

Dated: Brooklyn, New York
       June 29, 2015

To:   Clerk of the Supreme Court,
       Kings County
       320 Jay Street
       Brooklyn, New York 11201

       Sonia Tate-Cousins, Esq.
       Attorney for Defendant Troy Bennett
       Brooklyn Defender Services
       177 Livingston Street, 7th Floor
       Brooklyn, NY 11201

Respectfully submitted,

KENNETH P. THOMPSON
District Attorney
Kings County
350 Jay Street
Brooklyn, New York 11201
(718) 250-2000
By:

SASHA M. PEMBERTON
Assistant District Attorney

2015 JUN 30 PM 1:36

BROOKLYN DEFENDER
SERVICES

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:
-------------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

        - against -

**TROY BENNETT**

             Defendant.

-------------------------------------------------------------------------X

<u>AFFIRMATION</u>

**IND. # 1707/15**

    **SASHA M. PEMBERTON,** an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms the following to be true under the penalties of perjury:

    1.     I am an Assistant District Attorney in Kings County, and fully familiar with this case by virtue of a review of the records and files maintained by the District Attorney of Kings County and the New York City Police Department.

    2.     This affirmation is submitted in support of the attached motion for an order amending the caption of indictment number 1707/2015 to include the inadvertently omitted docket number 2015KN012626.

    3.     On May 16, 2012, the defendant pled guilty to Attempted Assault in the Second Degree.  The defendant was sentenced on the plea on June 13, 2012.  As part of the plea agreement, the defendant was informed that an order of protection would be issued against the defendant on behalf of Enroy Clarke and would be in effect between June 13, 2012 and July 13, 2020.  The order of protection was not subsequently vacated.

    4.     On or about February 27, 2015 between the hours of 2:00am and 11:00am, the defendant, who was residing at 332 Rutland Road, Kings County, went to the apartment of Enroy

Clarke, who also resided at 332 Rutland Road, Kings County, and repeatedly struck Mr. Clarke about the head with an unknown object.  The defendant removed Mr. Clarke's pants and shoes from Mr. Clarke's body and walked down the street with said clothes and threw the clothes into a garbage receptacle.  As the defendant was walking, he stated in sum and substance, that he was going to kill Mr. Clarke.  An eyewitness, observed the defendant walking and heard the defendant's statement and asked the defendant in sum and substance where Mr. Clarke was currently located.  The defendant replied in sum and substance that the Mr. Clarke made the defendant lose his daughter, and remarked on how dare Mr. Clarke come into the defendant's building.  The defendant went on to say in sum and substance, that Mr. Clarke was in the basement gagging on his own blood and that the defendant beat Mr. Clarke, took Mr. Clarke's clothes and keys and locked Mr. Clarke in the basement.  911 was called.

5.      The police arrived to find Mr. Clarke locked in his basement apartment; the defendant was not on scene at the time.  Mr. Clarke was transported to the hospital and subsequently entered a comatose state.  Mr. Clarke sustained multiple injuries including bleeding to the brain, fractured ribs, and scratched to the head, arms, legs and stomach.

6.      On or about March 1, 2015 at approx. 11:50am, in the vicinity of 342 Rutland Road, the defendant was spotted by an individual who called the police.  Police Officer Krystal Class and Sergeant Larry Meyers responded to the location and observed the defendant.  The police officers told the defendant to stop and that the defendant was under arrest.   The defendant subsequently fled on foot and the officers chased the defendant.  The police officers attempted to apprehend the defendant when the defendant flailed his arms and kicked his legs causing Police Officer Class to sustain a fracture to the finger.  The defendant was placed under arrest.

7.      Two (2) arrest numbers were generated for the defendant.  The first arrest number

was for the defendant's arrest with respect to the incident that occurred on February 27, 2015. The second arrest number was for the defendant's arrest with respect to the incident that occurred on March 1, 2015.

8.     The February 27, 2015 was assigned to docket number 2015KN012625 and the defendant was charged with Assault in the First Degree, a class B felony, and other related charges. The March 1, 2015 incident was assigned to docket number 2015KN012626 and the defendant was charged with Resisting Arrest, a class A misdemeanor.  The defendant was arraigned in criminal court on both docket numbers on March 3, 2015.

9.     The defendant was subsequently indicted under indictment number 1707/2015. Evidence was presented to the grand jury regarding both incidents under said indictment number. With respect to the February 27, 2015 incident, the grand jury returned an indictment of Attempted Murder in the Second Degree (P.L. 110/125.25), a class B felony, and other related charges.  With respect to the March 1, 2015 incident, the grand jury returned an indictment of Assault in the Second Degree (P.L. 120.05(3), a class D felony, and other related charges.

10.     The People filed the indictment with the Court and included docket number 2015KN012625 on the indictment, but inadvertently left docket number 2015KN012626 off of the indictment.

11.     The defendant was arraigned on the indictment on April 6, 2015 and pled not guilty. The case was adjourned to June 8, 2015.

12.     On June 8, 2015, the People made an oral application to amend the indictment. Defense counsel opposed to the amendment on the grounds that the indicted charges pertaining to the March 1, 2015 incident include a higher class of charges than originally charged against the defendant.  The Court set a motion schedule and adjourned the case to August 6, 2015.

13.     The People file the instant motion seeking to have indictment 1707/2015 amended to include docket number 2015KN012626 so that the indictment may reflect both of the incidents that the evidence placed before the grand jury and that the indicted charges pertain to.

14.     Pursuant to C.P.L. § 200.70, § 200.50, § 170.20,  and for the reasons in the attached memorandum of law, the prosecution requests the Court grant the motion in its entirety.


WHEREFORE, the District Attorney of Kings County requests this Court issue in order amending the caption of indictment number 1707/2015 to include docket number 2015KN012626.


Dated: Brooklyn, New York
       June 29, 2015


Sasha M. Pemberton
Assistant District Attorney

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 40
-----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

      -against-

TROY BENNETT
          Defendant
-----------------------------------------------------------------X

OPEN FILE DISCOVERY
INDICTMENT 1707/2015

       Sasha M. Pemberton, an Assistant District Attorney, hereby states the following under penalties of perjury:

1. I am an Assistant District Attorney with the Office of the District Attorney of Kings County and am familiar with the facts and circumstances of this case by virtue of a review of the files and records maintained by the office of the District Attorney in Kings County.

2. In compliance with C.P.L. 240.20, C.P.L. 240.45(1)(a) and <u>People v. Rosario,</u> 9 N.Y.2d 286 (1961), the People hereby attach photocopies of the documents listed below :

    1) AIDED REPORT (1 PAGE)

    2) REFUSED PRINTS (1 PAGE)

    3) OMNIFORM COMPLAINT – 1331 (2 PAGES)

    4) PO CLASS'S MEMOBOOK ENTRIES (6 PAGES)

    5) AIDED REPORT WORKSHEET (2 PAGES)

    6) PO YING'S MEMOBOOK ENTRIES (3 PAGES)

    7) PO OH'S MEMOBOOK ENTRIES (2 PAGES)

    8) SGT LAM'S MEMOBOOK ENTRIES (2 PAGES)

    9) PO NEEDHAM'S MEMOBOOK ENTRIES (4 PAGES)

    10) PO PUHL'S MEMOBOOK ENTRIES (3 PAGES)

    11) PO REID'S MEMOBOOK ENTRIES (4 PAGES)

    12) WITNESS STATEMENT (1 PAGE)

    13) LINE OF DUTY PAPERWORK (3 PAGES)

    14) MEDICAL RECORDS (221 PAGES)

**PREVIOUSLY SERVED ON D/C**

    15) ORDER OF PROTECTION (1 PAGE)

16) OMNIFORM COMPLAINT - 1312 (3 PAGES)
17) OMNIFORM ARREST REPORT – K1561461 (3 PAGES)
18) ONLINE BOOKING WORKSHEET - K1561461 (2 PAGES)
19) VSA SUPERFORM - K1561461 (2 PAGES)
20) COMPLAINT FOLLOW UP (1 PAGE)
21) OMNIFORM ARREST REPORT – K15614635 (3 PAGES)
22) ONLINE BOOKING WORKSHEET - K15614635 (2 PAGES)
23) VSA SUPERFORM - K15614635 (2 PAGE)
24) MEDICAL TREATMENT OF PRISONER (1 PAGE)
25) CONFIRMATORY PHOTOGRAPHS (2 PAGES)
26) OMNIFORM COMPLAINT - 1306 (3 PAGES)
27) COMPLAINT FOLLOW UP (1 PAGE)
28) SPRINT REPORT (11 MINUTES)
29) SCREENING SHEET (2 PAGE)
30) GRAND JURY SYNOPSIS (4 PAGES)
31) GRAND JURY MINUTES (26 PAGES)
32) PICTURES OF COMPLAINANT IN COLOR (4 PAGES)
33) PICTURES OF COMPLAINANT IN BLACK & WHITE (4 PAGES)
34) PICTURES OF LOCATION IN COLOR (13 PAGES)
35) PICTURES OF LOCATION IN BLACK AND WHITE (13 PAGES)

The photocopies are exact reproductions of the original documents, except to the extent that witnesses' addresses and telephone numbers, and the names of confidential informants and undercover police officers have been redacted.

Dated:   October 26, 2015
Brooklyn, New York

Sasha M. Pemberton
Assistant District Attorney
Trial Division IV/Green Zone
(718) 250-5275

Receipt Acknowledged: _____

Page 2 of 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 40
-----------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

            -against-

TROY BENNETT

            Defendant

-----------------------------------------------------------X

OPEN FILE DISCOVERY
INDICTMENT 1707/2015

Sasha M. Pemberton, an Assistant District Attorney, hereby states the following under penalties of perjury:

1. I am an Assistant District Attorney with the Office of the District Attorney of Kings County and am familiar with the facts and circumstances of this case by virtue of a review of the files and records maintained by the office of the District Attorney in Kings County.

2. In compliance with C.P.L. 240.20, C.P.L. 240.45(1)(a) and People v. Rosario, 9 N.Y.2d 286 (1961), the People hereby attach photocopies of the documents listed below:

## CURRENT PACKET

  1)  SGT. MEYER'S MEMOBOOK ENTRIES (3 PAGES)

  2)  DEFT'S RIKERS MEDICAL RECORDS (82 PAGES)

  3)  911/RADIO RUN FROM 2/27/15 (1 DISK)

## PREVIOUSLY SERVED ON D/C

  4)  BCI PHOTO IN COLOR (1 PAGE)

  5)  BCI PHOTO IN BLACK & WHITE (1 PAGE)

  6)  DET. O'SULLIVAN'S DD5 (1 PAGE)

  7)  CERTIFIED EMS RECORDS (6 PAGES)

  8)  AIDED REPORT PRINTOUT (1 PAGE)

  9)  RECENT PHOTOS OF CW IN COLOR (7 PAGES)

  10) RECENT PHOTOS OF CW IN BLACK & WHITE (7 PAGES)

  11) C/W'S ADDITIONAL MEDICAL RECORDS (186 PAGES)

  12) 911 CALL FROM 3/1/15 (1 DISK)

  13) AIDED REPORT (1 PAGE)

  14) REFUSED PRINTS (1 PAGE)

Page 1 of 3

15) OMNIFORM COMPLAINT – 1331 (2 PAGES)

16) PO CLASS'S MEMOBOOK ENTRIES (6 PAGES)

17) AIDED REPORT WORKSHEET (2 PAGES)

18) PO YING'S MEMOBOOK ENTRIES (3 PAGES)

19) PO OH'S MEMOBOOK ENTRIES (2 PAGES)

20) SGT LAM'S MEMOBOOK ENTRIES (2 PAGES)

21) PO NEEDHAM'S MEMOBOOK ENTRIES (4 PAGES)

22) PO PUHL'S MEMOBOOK ENTRIES (3 PAGES)

23) PO REID'S MEMOBOOK ENTRIES (4 PAGES)

24) WITNESS STATEMENT (1 PAGE)

25) LINE OF DUTY PAPERWORK (3 PAGES)

26) MEDICAL RECORDS (221 PAGES)

27) ORDER OF PROTECTION (1 PAGE)

28) OMNIFORM COMPLAINT - 1312 (3 PAGES)

29) OMNIFORM ARREST REPORT – K15614631 (3 PAGES)

30) ONLINE BOOKING WORKSHEET - K15614631 (2 PAGES)

31) VSA SUPERFORM - K15614631 (2 PAGES)

32) COMPLAINT FOLLOW UP (1 PAGE)

33) OMNIFORM ARREST REPORT – K15614635 (3 PAGES)

34) ONLINE BOOKING WORKSHEET - K15614635 (2 PAGES)

35) VSA SUPERFORM  - K15614635 (2 PAGE)

36) MEDICAL TREATMENT OF PRISONER (1 PAGE)

37) CONFIRMATORY PHOTOGRAPHS (2 PAGES)

38) OMNIFORM COMPLAINT - 1306 (3 PAGES)

39) COMPLAINT FOLLOW UP (1 PAGE)

40) SPRINT REPORT (11 PAGES)

41) SCREENING SHEET (2 PAGE)

42) GRAND JURY SYNOPSIS (4 PAGES)

43) GRAND JURY MINUTES (26 PAGES)

44) PICTURES OF COMPLAINANT IN COLOR (4 PAGES)

45) PICTURES OF COMPLAINANT IN BLACK & WHITE (4 PAGES)

46) PICTURES OF LOCATION IN COLOR (13 PAGES)

47) PICTURES OF LOCATION IN BLACK AND WHITE (13 PAGES)

The photocopies are exact reproductions of the original documents, except to the extent that witnesses' addresses and telephone numbers, and the names of confidential informants and undercover police officers have been redacted.

Dated:   April 20, 2016
Brooklyn, New York

Sasha M. Pemberton
Assistant District Attorney
Trial Division IV/Green Zone
(718) 250-5275

Receipt Acknowledged: _____

Page 3 of 3

**Kenneth P. Thompson**
District Attorney

**DISTRICT ATTORNEY**
**KINGS COUNTY**
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

PRECINCT OF OCCURRENCE: 71

SPECIALIZED BUREAU: GREEN ZONE

(IF NOT TRIAL DIVISION)

# GRAND JURY SYNOPSIS SHEET

INDICTMENT NO: 1707/15   SUPERCEDING No. _____   RESUBMISSION No. _____

GRAND JURY LETTER: D   TERM: 3   A.D.A   GWEN BARNES

TYPE OF INSTRUMENT: ✓   INDICTMENT   PROS. INFO.   S.C.I.   FAM. CT.

| Δ Name | Docket | Status | | | | | | | | | | 190.50 Served | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | X | XC | J | P | B | AFO | VFO | JO | Y | N | W/D | |
| BENNETT, TROY (M/38) | 2015KN012625 | | | ✓ | | | | | | | ✓ | | |

## TWO TPOs: ATTEMPTED MURDER AND ASSAULT ON A POLICE OFFICER

**TPO 1: ON OR ABOUT 2/27/2015 ON OR ABOUT AND BETWEEN 02:00 HOURS AND 11:00 HOURS IN VICINITY OF 332 RUTLAND ROAD**

- RELATIONSHIP: DEFENDANT AND C/W LIVE IN THE SAME BUILDING; DEFENDANT, C/W AND E/W GARRICK HAYE ARE NEIGHBORS
- THERE IS AN ORDER OF PROTECTION IN EFFECT AGAINST DEFENDANT AND IN FAVOR OF C/W THAT WAS ISSUED ON 6/13/2012 AND THAT IS IN EFFECT UNTIL 7/13/2020 UNDER INDICTMENT NUMBER 10898/2011
- AT TPO, DEFENDANT WENT TO C/W'S APARTMENT WHICH IS LOCATED IN THE BASEMENT OF 332 RUTLAND ROAD AND HIT C/W REPEATEDLY WITH AN UNKNOWN OBJECT
- DEFENDANT TOOK C/W'S PANTS AND SHOES OFF OF C/W AND WALKED DOWN THE STREET WITH SAID CLOTHES
- DEFENDANT STATED IN SUM AND SUBSTANCE, I'M GOING TO KILL 'SOCA' (THE C/W'S NICKNAME) TO THE E/W
- DEFENDANT WALKED TO THE END OF THE BLOCK AND THREW C/W'S CLOTHES IN THE GARBAGE
- DEFENDANT WAS WEARING ALL WHITE AND HAD WHAT APPEARED TO BE BLOOD ON THE DEFENDANT'S SHIRT
- E/W OBSERVED THE DEFENDANT AND ASKED THE DEFENDANT WHERE SOCA IS
- DEFENDANT STATED IN SUM AND SUBSTANCE, HE MADE ME LOSE MY DAUGHTER, HOW DARE HE COME INTO MY BUILDING, THAT MOTHER FUCKER IS IN THE BASEMENT GAGGING ON HIS OWN BLOOD, I BEAT THE SHIT OUT OF HIM, TOOK HIS CLOTHES, TOOK HIS KEY AND LOCKED HIM IN THERE
- E/W WENT TO A NEIGHBOR'S HOUSE AND THE NEIGHBOR OSWALD CUMBERBATCH CALLED 911
- OFFICER REID, SERGEANT VIGILANCE AND SERGEANT LAM ARRIVED AND CONDUCTED A CANVASS WITH OSWALD CUMBERBATCH FOR THE DEFENDANT WITH NEGATIVE RESULTS
- OFFICERS WENT TO THE BASEMENT OF 332 RUTLAND ROAD AND OBSERVED THE DOOR TO THE C/W'S APARTMENT TO BE LOCKED
- THE SUPER UNLOCKED THE DOOR TO THE C/W'S APARTMENT
- OFFICER REID OPENED THE DOOR AND OBSERVED THAT THERE WAS WHAT APPEARED TO BE BLOOD ON THE DOOR KNOB
- OFFICER REID PUSHED THE DOOR OPEN AND HAD TO USE SOME FORCE AS THE C/W WAS DIRECTLY BEHIND THE DOOR
- THE C/W WAS LYING ON THE FLOOR WITH NO PANTS OR SHOES ON AND COVERED IN BLOOD
- EMS TOOK THE C/W TO KINGS COUNTY HOSPITAL WHERE HE WENT INTO A COMA
- C/W'S CLOTHING NOT RECOVERED
- ECT DID NOT RESPOND
- C/W SUSTAINED BLEEDING TO THE BRAIN, FRACTURED RIBS, AND BRUISING AND SCRATCHES TO THE

## Patient Discharge Report
### Kings County Hospital Center Emergency Department

Printed on: Fri 02/27/2015 21:27
Disposition Time 02/27/2015 21:22

Patient Bennett,Troy
MR# 2220756

Visit healthcare provider: Moran,Jaime

Attending Physician: Johnson,Elma

Diagnosis: Injury, Hand

Disposition: Discharged to Home or Self Care

Tests Performed: Right Finger XR Routine, Right Hand XR Routine
Procedure(s): no procedures performed

Your doctor wants you to follow the custom instructions below:

Please take your antibiotic medication as prescribed.  Please follow up in
Orthopedic Hand clinic on Monday morning, 8am, E-Building, 8th Floor, Suite D
for follow up.  If they are unable to accommodate your visit, please come down
to the emergency department for a wound check.  Return to the emergency
department sooner if you develop increased pain or swelling, bleeding,
drainage, pus, inability to move the fingers, fevers, or any concerns or
worsening symptoms or signs of infection to the laceration site.  Thank you.
In the ED, we gave you the following new prescriptions:

Cephalexin 250 mg Capsule 2 cap oral qid x7day
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Your doctor has requested an appointment for you in Hand - 265
Timeframe: <72 hours or next clinic
Appointment date/time: _____ As above
ED Clerk: please complete the Discharge Planning note
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Important Notes:
    In addition to following up as instructed, please contact your primary
doctor if your insurance assigns you one.  If you are having difficulty making
an appointment at Kings County, please call the Central Appointment Scheduling
office during business hours at
(718)245-3325.
    Only you can know when you are having an emergency.  If signs and symptoms
suggest that your condition is worsening, please contact a doctor immediately.
If you believe it is an emergency, please return to the ER or call 911.


_____
Patient/Guardian signature

Physician/Provider signature

I have received these instructions and
had my questions answered

I have reviewed these instructions with
the patient.





## Patient Discharge Report
### Kings County Hospital Center Emergency Department

Printed on: Sun 03/01/2015 05:32          Patient Bennett,Troy
Disposition Time 03/01/2015 05:31               MR# 2220756

Visit healthcare provider: Kerolle,Harold

Attending Physician: Kerolle,Harold

Diagnosis: Injury, Hand

Disposition: Discharged to Home or Self Care

Tests Performed:
Procedure(s): no procedures performed

Your doctor wants you to follow the custom instructions below:

KEEP YOUR FOLLOW UP APPOINTMENT WITH HAND CLINIC FOR TOMORROW.
Important Notes:
    In addition to following up as instructed, please contact your primary
doctor if your insurance assigns you one.  If you are having difficulty making
an appointment at Kings County, please call the Central Appointment Scheduling
office during business hours at
(718) 245-3325.
    Only you can know when you are having an emergency.  If signs and symptoms
suggest that your condition is worsening, please contact a doctor immediately.
If you believe it is an emergency, please return to the ER or call 911.

_____          _____
Patient/Guardian signature            Physician/Provider signature

I have received these instructions and     I have reviewed these instructions with
had my questions answered                   the patient.

# KINGSBROOK
JEWISH MEDICAL CENTER
EMERGENCY DEPARTMENT
585 Schenectady Ave. Brooklyn, NY 11203
718.604.5000   www.kingsbrook.org

Patient: Bennett, Troy
Med.Rcrd: 070073
Pt Accnt: 105555

## Disposition Summary (for discharged patient, English)

Patient: Bennett, Troy
Mailing Address: 332 Rutland Road
Ph
City: Brooklyn   NY   11225
Arrival Time: 3/2/2015 6:38am
Time Left ED:
Dispo Summary Printed: 3/2/2015 9:08am
Admit Order Time:
RN Triage: Spence, Ingrid R.N
RN Dispo:
MD ED: Barney, David M.D.
PMD: Undefined Physician
Referring MD: Emergency, Dept Physician
Chief Cmplnt: Right Arm Pain/Spasms All Over Body, Painful Rt Arm, Body Sp Engl Dx 1:
Dx 1: Myalgia (Not Otherwise Specified)
MD Sgntr: Barney, David M.D. 3/2/2015 8:24am

SS #:
DOB: 10/5/1976
Age: 38yr
Home Ph:
Disposition: Home

Rm (last): 15

RN Eval: Grenade Alisha R.N.
Mlp/Res:

PMD Ph:
Referring MD Ph:
ICD-9.1: 729.1

## Disposition

Follow-up 1: Medical Clinic
585 Schenectady Avenue

Brooklyn   N.Y.   11203
Follow-up 1 Date: 1-2 Days

F/U MD Ph: (718) 604-5700
F/U MD Fax: 718 363-6548

| Calls | | | | | | |
|-------|----------|--------------|---------|---------|---------|----------|
| Name | Comments | Requested By | Call #1 | Call #2 | Call #3 | Returned |
| No Entries | | | | | | |

Other Instr: Return to ER if you have worsening symptoms, follow up with your doctor
Restrictions:

| Procedures During This ED Visit: |
|----------------------------------|
| Procedure |
| No Entries |

| Orders During This ED Visit: |
|------------------------------|
| Order |
| No Entries |

## MY SIGNATURE BELOW INDICATES:
> I have received and understood the oral instructions regarding my current medical problem.

**NYSID No:** 02226479M   **B&C No:** 1411502136

**BENNETT, TROY**
332 RUTLAND ROAD, 2B, 2B, BK, NY 11225

**Primary Insurance:**
**PCP:**

**DOB:** 10/05/1976   **Age:** 38 Y   **Sex:** male

Home:
Work:
Cell:
Email:
Advance Directive:

**Allergies :   N.K.D.A**

## Medical History

### Active Problem List

| Code | Name | Specify | Notes | Added On | Modified On | Modified By |
|------|------|---------|-------|----------|-------------|-------------|
| V70.0 | ROUTINE MEDICAL EXAM | | | 03/04/2015 | 03/04/2015 | Bhatti, Harjinder |
| 959.4 | HAND INJURY NOS | | | 03/04/2015 | 08/05/2015 | Wachtel, Peter |
| 525.9 | DENTAL DISORDER NOS | | | 03/04/2015 | 03/04/2015 | Bhatti, Harjinder |
| 714.9 | Arthralgias | R Thumb Tenderness | | 03/19/2015 | 03/19/2015 | Janvier, Jean-Joseph |
| 719.41 | Joint pain, shoulder | Left Shoulder | | 05/08/2015 | 05/08/2015 | Massillon (Inactive), Arlie |
| 840.4 | Rotator cuff (capsule) sprain and strain | left | | 05/28/2015 | 05/28/2015 | Gordon, Kennedy F |
| 815.03 | Closed fracture of shaft of metacarpal bone(s) | left 4rth | required ORIF | 05/28/2015 | 05/28/2015 | Gordon, Kennedy F |
| V62.6 | REFUSAL OF TREATMENT | | | 07/07/2015 | 07/07/2015 | Jean Gilles, Lesly |
| E958.9 | INJURY-NOS | Facial contusion r/o nasal bone fracture? | | 08/04/2015 | 08/04/2015 | Shpits, Iosif |
| 802.0 | Closed fracture of nasal bones | | | 08/05/2015 | 08/05/2015 | Wachtel, Peter |
| 726.10 | ROTATOR CUFF SYND NOS | left shoulder in rt. handed male | | 08/17/2015 | 08/17/2015 | Lieberman, Lester |

## Medications

**Name strength formulation, Sig: take route frequency**
Flonase 50 MCG/ACT Suspension, Sig: 1 puff Nasally Every 12 Hours Start Date: 09/08/2015



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

## HEARING REPORT AND NOTICE OF DISCIPLINARY DISPOSITION

| | |
|---|---|
| Page 1 of 2 Pages | Form: 6500D<br>Rev.: 02/09/07<br>Ref.: Dir. #6500R-B |

Infraction #: 927/15

Inmate Name (Last, First): Bennett, Troy

Location: Upper

Institution: OBCC

B&C/ Sentence #: 141.15.02136

NYSID #: 02276409M

Disposition Date: 8/11/15

Disposition Time: _____ Hrs.

Adjudication Captain (Print Name, Rank & Shield #): Walker Capt 359

Tape Data (Tape #): _____

Counter # at Start: _____

Counter # at End: _____

Inmate's Accompanying card indicates Inmate Received Rule Book: ☐ Yes ☐ No

Inmate requested Witness(es): ☐ Yes ☐ No ☐ Waived ☐ Request Granted ☐ Denied  (If waived, inmate must sign. If denied, state reason.)

Reason: _____

Inmate requested Hearing Facilitator: ☐ Yes ☐ No ☐ Waived ☐ Request Granted ☐ Denied  (If yes, Hearing Facilitator must sign. If waived, inmate must sign. If denied, state reason.)

Reason: _____

Inmate Requested Interpreter: ☐ Yes ☐ No ☐ Waived ☐ Request Granted ☐ Denied  (If yes, Interpreter must sign. If waived, inmate must sign. If denied, state reason.)

Reason: _____

If inmate advised of right to remain silent was Inmate advised that statements could be used against him/her.  ☐ Yes ☐ No ☐ Not Applicable

## Special Situations

Hearing in Absentia: ☐ Inmate Refused to Appear   ☐ Removed from Hearing Due to _____
Specify Reason

Adjournment: ☐ By Adjudication Captain   Date Reconvened _____/_____/_____

☐ By Inmate   Waived Time Limits to Facilitate Adjournment (Inmate Signature) _____

Referral: ☐ Security   ☐ Mental Health   ☐ Inspector General

Inmate Pled: ☐ Guilty   ☐ Not Guilty   ☐ Guilty with an Explanation

Summary of Inmate's Testimony: _____

_____

_____

_____

_____

_____

_____

_____

The following witness(es) testified at your hearing. (If additional witnesses testified, attach additional sheets.)

Witness Name (Last Name, First Name): _____   Rank/Title, Shield/ID # (if staff), B&C/Sentence # (if inmate): _____

Witness Signature (Present at Hearing): _____

Witness testified in the presence of the charged inmate: ☐ Yes ☐ No   If no, state reason: _____

Summary of Testimony: _____

_____

Testimony was: ☐ Credited ☐ Rejected   Reason: _____

_____

Witness Name (Last Name, First Name): _____   Rank/Title, Shield/ID # (if staff), B&C/Sentence # (if inmate): _____

Witness Signature (Present at Hearing): _____

Witness testified in the presence of the charged inmate: ☐ Yes ☐ No   If no, state reason: _____

Summary of Testimony: _____

_____

Testimony was: ☐ Credited ☐ Rejected   Reason: _____

_____



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

## HEARING REPORT AND NOTICE OF DISCIPLINARY DISPOSITION



| Page 2 of 2 Pages | Form: 6500D<br>Rev: 02/09/07<br>Ref.: Dir. #6500R-B |

**DOCUMENTARY EVIDENCE (Where applicable)**

| | | |
|---|---|---|
| Photograph of Injury: | ☐ Yes ☐ No | Shown to Inmate: ☑ Yes ☐ No |
| Photocopy of Weapon: | ☐ Yes ☐ No | Shown to Inmate: ☐ Yes ☐ No |
| Reports - Specify Types: | ☐ Yes ☐ No | Shown to Inmate: ☐ Yes ☐ No |
| Logbooks - Specify Types: | ☐ Yes ☐ No | Shown to Inmate: ☐ Yes ☐ No |
| Infraction Investigation: | ☐ Yes ☐ No | Shown to Inmate: ☐ Yes ☐ No |
| Physical Evidence (List): | ☐ Yes ☐ No | Shown to Inmate: ☐ Yes ☐ No |
| Witness Statements (List Witnesses): | ☐ Yes ☐ No | Shown to Inmate: ☐ Yes ☐ No |

On this date and time following disposition was reached after a hearing on the charges listed below: 1500   8/11/15

| Charge # | Dismissed | Guilty | Penalty | Basis for Findings & Evidence Relied On |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DISMISSED
NHR

Twenty Five Dollar ($25) Disciplinary Surcharge Grade I or Grade II offenses only: ☐ Yes  ☑ No

If you have been found guilty of multiple rule violations, these penalties will be served: ☐ Consecutively  ☑ Concurrently

Infraction Dismissed: ☑ Yes  ☐ No

Reason: Based on the investigating Captains (Johnson) recommendation. No Hearing is recommended

Pre-Hearing Detention Time Credit: _____ Days.

Adjudication Captain (Print Name, Rank, Shield #): Walker Capt 359

Signature of Adjudication Captain:

You have the right to appeal an adverse decision rendered by the Adjudication Captain within two (2) days of service of this decision. If you have been sentenced to a total of thirty (30) days or more of punitive segregation or loss of all your good time on any one (1) Notice of Disciplinary Disposition (6500D), your appeal shall be forwarded to the General Counsel in the Legal Division. Within five (5) business days of the receipt of your appeal, you will receive a written decision from the General Counsel regarding such appeal unless further documentation/information is required by the General Counsel to decide your appeal. In those cases, the five (5) business day time limit shall be extended and the reasons for the extension will be noted on the General Counsel's decision to you. If you receive an unfavorable decision from the General Counsel or you do not receive a decision from the General Counsel within ten (10) business days of receipt of your appeal, you may file a petition for a writ under Article 78 of the CPLR. If you are sentenced to less that thirty (30) days punitive segregation or loss of less than all your good time, you may appeal that decision to the Warden of the facility where the infraction occurred.

| I certify that I received a copy of this notice: | Signature of Inmate: Myron Bennett | B&C/Sentence #: 14170502136 | Date: 8/11/15 | Time: 2010 |
| Served by (Print Name, Rank and Shield #): Givens Capt 1424 | | Signature of Server: | | |
| Refused to Sign for Notice: ☐ Yes ☐ No | | Witnessed By: | | |

# CORRECTION DEPARTMENT
# CITY OF NEW YORK

## INJURY TO INMATE REPORT

| Page 1 of 2 Pages | Form: #167R-A<br>Rev.: 01/31/08<br>Ref.: Dir.#4516R-A |
|---|---|

**INSTRUCTIONS:** Original Report to Security, One copy to Clinic Lock Box, One Copy to Inmate Medical File.

Command: BKDC   Date: 8/4/15   COD/UCF #:   Injury #: F11/6-53:7

**(TO BE COMPLETED BY EMPLOYEE (PLEASE PRINT CLEARLY).**

Inmate Name (Last Name, First Name): Bennett, Troy

Location: 9D   Work:   NYSID #: 02226479M   Book & Case/Sent #: 1415 02136

Details: On August 04, 2015 at Approsimatly 2105 Hrs Inmate Bennett 1770 was involved in an Inmate on Inmate Attack with Inmate(s) Brown, Corey 1413 2170 9UD1 and Inmate Watson, Quaysean 141 TV 9853 9UDS

Supervisor Notified (Print Last Name, First Name, Rank, Shield #): Johnson Captain 779   Date: 8/4/15   Time: 2110 Hrs.

Employee: I [ ] (Did) [X] (Did Not) Witness This Injury.   Employee Signature: CO Johnson   Rank/Title: C.O.   Shield/ID#: 9027

**TO BE COMPLETED BY MEDICAL STAFF ONLY (PLEASE PRINT CLEARLY)**

Date of Injury: 8/4/15   Reported for Medical Attention: Date: 8/4/15   21 Hrs.   Inmate Refused Medical Attention: [ ] Yes [X] No   Visible Injuries: [X] Yes [ ] No

Nature of injury and Cause: Patient was evaluated in the clinic c/o injury to an nasal bridge and nasal swelling. He denied loc dizziness or blurry vission. objective nasal diviation with nasal bleeding.

Treatment: post exam normal c/o injury nasal bone fracture? Tileneal x 3 and sent to the x-ray for tomorrow

Treated By/Examined By (Print and Sign Full Name): [signature]   Title: MD

Referral to Other Medical Services (If Yes, Document Medical Findings): [ ] Yes [ ] No

Treated By/Examined By (Print and Sign Full Name):   Title:

Please Check Disposition: [ ] Return to Housing Area [ ] Work Release ___ Days [ ] Light Duty ___ Days [ ] Return to Work Assignment [ ] Re-Exam ___ Days [ ] Refer to Clinic [ ] Return to School

Transfer to Hospital (indicate Name of Hospital): no   [ ] Life Threatening Emergency [X] Routine

Other (Please Specify): no

Treated By (Print Full Name and Title, Sign Name): [signature]   Date: 8/4/15   Time: 22:14 Hrs.

**I certify that the cause of injury as stated herein is to my knowledge true and medical attention was provided:**

Inmate Signature: Troy Bennett M.   B&C / Sentence #: 1415 02136   Date: 8/4/15

Witnessed By (Signature): Toni VK   Rank/Title: CO   Shield/I.D. #:   Date: 8/4/15



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

**ATTACHMENT A**

## REPORT AND NOTICE OF INFRACTION

Form: 6500A
Rev.: 02/09/07
Ref.: Dir.#6500R-B

| Infraction #: | Institution: DBCC | Date of Incident: 10 15 15 | Date of Report: 10 15 15 |
|---|---|---|---|

Inmate Name (Last, First): **Bennett Troy**
B&C/Sentence #: 141-15-02136   NYSID #: 0777647 9M

Location of Incident (Be Specific): **2 upper Dayroom**
Housing Area Location: **2upper 'B'**   Approximate Time of Incident: **1300** Hrs.

| Charge # | Offense | Charge # | Offense |
|---|---|---|---|
| 101 | Assault Fighting | | |
| 120·11 | Refusal to obey a Direct order | | |

Reporting Official (Print Name, Rank and Shield #): **Owen C.O. # 9149**
Reporting Official (Signature): *Owen*

**Details of Incident (Include details as to How, When and Where Infraction was Committed):**

ON Thursday October 15, 2015 at approximately 1300hrs. I c.o. Owen #9149 assigned as meal relief officer on the 1059x1731 tour. While conducting meal relief in Dorm upper 'B' I c.o. Owen witness Inmate Ray Jose 241141142 N:06918813N jump up in a aggressive manner with a closed fist and strike inmate Bennett Troy 141150213# N:022264 79M in the facial area. Inmate Bennett Troy then return a closed fist punch to inmate Ray Jose at which time he fell on the table. Both inmate were given several direct order to stop fighting in which they comply. P.R.A # 80 was activated; both inmate were escorted out of the area without any further incident.

You are entitled to a hearing for this infraction no sooner than twenty-four (24) hours after you are served with this notice. If you are a sentenced inmate and you commit an infraction within twenty-four (24) hours prior to your discharge, and have not reached your maximum sentence expiration date, you may be served with charges and held for a hearing. The Department will make every effort to hold this hearing within three (3) business days of the service of this notice. This three (3) business day period excludes the day you are served, weekends, holidays, days you go to court (whether in person or via teleconference), days you are hospitalized or at a hospital attending a clinic, days you leave the facility for an attorney interview, days you are unavailable because you are transferred to another facility and days you are unavailable due to your absence from the facility for any purpose. The three (3) business day period is automatically extended by one (1) business day if you are transferred to another facility prior to your hearing (unless you are a Pre-Hearing Detention inmate). Commencement of a hearing after three (3) business days is at the discretion of the Adjudication Captain and is not barred by Department rules.

At your hearing you have the following rights:

1. Right to appear personally, unless you waive your right to appear, refuse to attend the hearing or appear at the hearing and become disruptive.
2. Right to make statements. If you choose to remain silent, your silence cannot be used against you. If you make a statement, such statement cannot be used in a subsequent criminal trial unless you have been given a Miranda Warning and then voluntarily testify.
3. Right to present material evidence.
4. Right to present witnesses.
5. Right to the assistance of a Hearing Facilitator if Adjudication Captain deems one is necessary.
6. Right to an interpreter if you cannot communicate well enough in English.
7. Right to appeal.

Within twenty-four hours of the Adjudication Captain reaching a decision of guilty, you will receive a copy of the "NOTICE OF DISCIPLINARY HEARING DISPOSITION" form informing you of the violation(s) you are found guilty of, the basis for that finding, the evidence relied upon and the penalty to be imposed. The following penalties are the maximum which may be imposed individually or in any combination:

1. Reprimand.
2. Loss of privileges.
3. Loss of good time if you are a sentenced inmate.
4. Punitive segregation for up to ninety (90) days per each applicable individual charge.
5. Restitution for intentionally damaging or destroying City property.

A twenty five ($25) dollar disciplinary surcharge will be imposed on all inmates found guilty of a Grade I or Grade II offense.
You have the right to appeal an adverse decision rendered by the Adjudication Captain.

| Interpreter Requested: | ☐ Yes (if yes, include what language) | ☐ No |
|---|---|---|
| Hearing Facilitator Requested: | ☐ Yes ☐ No | |
| Witness(es) Requested: | ☐ Yes (if yes, include witness(es) Name, Book and Case Number (if inmate) or Shield/ID (if staff) and Location (if inmate) or Post (if staff). | ☐ No |

Witness (Print Name): _____  B&C Number: _____  Location: _____

Witness (Print Name): _____  B&C Number: _____  Location: _____

Witness (Print Name): _____  B&C Number: _____  Location: _____

Witness (Print Name): _____  Shield/ID Number: _____  Post: _____

| I certify that I received a copy of this notice: | Signature of Inmate: *Troy Bennett* | Date: 10/16/15 | Time: 2219 |
|---|---|---|---|
| Served by (Print Name, Rank and Shield #): *Winnie capt c95* | Signature of Server: | | |

**INMATE COPY**

Case 1:16-cv-06035-KAM-PK Document 1 Filed 10/31/16 Page 72 of 84 PageID #: 72

Troy Bennett
**INMATE NAME**

1411502136
**BOOK&CASE**

Rice Review 11/04/15
**DBCC FACILITY**

11,04,2015
**DATE**

64

**WITHDRAWAL AMOUNT**

MAILED TO:

New York City Comptroller
**NAME**

1. Center Street New York N
**ADDRESS**    **CITY**    **STATE**

Troy Bennett
**INMATE SIGNATURE**

**DEBITED BY (CASHIER)**

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ .70 |
| Certified Fee | 3.45 |
| Return Receipt Fee (Endorsement Required) | 2.80 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.85 |

Postmark Here

Sent To: N.Y.C. Comptroller's Office
Street, Apt. No.; or PO Box No. 1 Center Street Room 1205
City, State, ZIP+4 New York New York 10007.

PS Form 3800, June 2002    See Reverse for Instructions

Note: Mailroom Officer forwards this request to RICC along with each parcel or letter.

West Facility

16-06 Hazon Street  East Elmhurst, NY 11370

Tel: 718-546-4150   Fax:

PETER WACHTEL, DO

| | |
|---|---|
| Patient: | BENNETT, TROY |
| DOB: | 10/05/1976, Sex: Male |
| Address: | 332 RUTLAND ROAD, 2B, 2B, BK, NY 11225 |
| Phone: | |

10/01/2015

| | |
|---|---|
| Ordered Date: | 08/05/2015 |
| Assessments: | HAND INJURY NOS |
| Lab: | Hand Right Ap, Oblique, Lateral (XRAY) |
| Fasting: | No |
| Specimen: | Collection Date:08/05/2015   Time:12:03 PM |
| Clinical Info: | |

| Name | Value | Reference Range |
|---|---|---|
| Result: | Abnormal/Positive/Reactive | |
| Received Date: | 08/06/2015 | |
| Notes: | Villalobos,Jorge , PA 8/6/2015 5:11:11 PM > RIEPF,VILLALJV, Villalobos, Jorge - 8/6/2015 5:09:52 PM | |

STUDY: RIGHT HAND X-RAY. CLINICAL INDICATION: TECHNIQUE: AP, lateral, and oblique views obtained and compared to prior study of 04/22/2015. FINDINGS: There appears to be an old fracture of the fourth metacarpal. Metallic plates and screws are in place. There is old fracture deformity of the fifth metacarpal. This is unchanged since prior study of 04/22/2015. There are no acute fractures. This is also unchanged compared to prior study. IMPRESSION: 1. Old fracture deformity of the fourth and fifth metacarpals. Metallic hardware overlying the fourth metacarpal. 2. No acute fractures. 3. No change since prior study of 04/22/2015. Report Electronically Signed by: Michael Shapiro Report Electronically Signed on: 08/06/2015 06:38 AM - F/U PRN

Patient Name: BENNETT, TROY , DOB: 10/05/1976

**Brooklyn Detention Center**

275 Atlantic Avenue  Brooklyn, NY 11201

Tel:   Fax:

Iosif Shpits, MD

| Patient: | BENNETT, TROY |
| DOB: | 10/05/1976, Sex: Male |
| Address: | 332 RUTLAND ROAD, 2B, 2B, BK, NY, 11225 |
| Phone: | |

10/01/2015

| Ordered Date: | 08/04/2015 |
| Assessments: | INJURY-NOS |
| Lab: | Nasal Bones Both Laterals, Upright Waters View (XRAY) |
| Fasting: | No |
| Specimen: | Collection Date: 08/05/2015   Time: 10:41 AM |
| Clinical Info: | |

| Name | Value | Reference Range |
|---|---|---|
| Result: | Abnormal/Positive/Reactive | |
| Received Date: | 08/05/2015 | |

Notes:

Villalobos, Jorge , PA 8/6/2015 4:04:42 PM > RIEPR.VILLALJV, Villalobos, Jorge - 8/6/2015 4:03:55 PM

STUDY: NASAL BONES X-RAY. CLINICAL INDICATION: TECHNIQUE: Lateral views of the nasal bones and waters view of the skull were obtained reveals the following: FINDINGS: There is a nondisplaced fracture of the mid distal nasal bones. The anterior maxillary spines appear intact. Maxillary sinuses and orbital floors are grossly intact. IMPRESSION: Nondisplaced fracture of mid distal nasal bones bilaterally. Report Electronically Signed by: Michael Shapiro Report Electronically Signed on: 08/05/2015 03:46 PM - PENDING ENT

Patient Name: BENNETT, TROY , DOB: 10/05/1976

| Brooklyn Detention Center | | |
|---|---|---|
| 275 Atlantic Avenue  Brooklyn, NY 11201 | | Losly Joan Gilles,MD |
| Tel:  Fax: | | Physician |

| Patient:, | BENNETT, TROY | 10/01/2015 |
|---|---|---|
| DOB: | 10/05/1976, Sex: Male | |
| Address: | 332 RUTLAND ROAD, 2B, 2B, BK, NY 11225 | |
| Phone: | | |

| Ordered Date: | 04/20/2015 |
|---|---|
| Assessments: | Arthralgias |
| Lab: | Hand Right Ap, Oblique, Lateral (XRAY) |
| Fasting: | No |
| Specimen: | Collection Date:04/22/2015   Time:10:54 AM |
| Clinical Info: | |

| Name | Value | Reference Range |
|---|---|---|
| Result: | Abnormal/Positive/Reactive | |
| Received Date: | 04/22/2015 | |
| Notes: | Parks,Scott , PA 4/23/2015 9:44:58 PM > STUDY: RIGHT HAND X-RAY. CLINICAL INDICATION: TECHNIQUE: AP, lateral, and oblique views. FINDINGS: The patient is status post open reduction and internal fixation of the old fracture of fourth metacarpal with metallic plates and screws in place. There is old fracture deformity of the fifth metacarpal as well. There are no acute fractures demonstrated. The alignment is unremarkable. There is soft tissue calcification of the dorsum of the wrist, which may be related to an old chip fracture, this is well claudicated. IMPRESSION: 1. Old fracture deformity of the fourth and fifth metacarpals with metallic hardware overlying the fourth metacarpal. 2. Mild degenerative change. 3. Calcific chip in dorsum of the wrist, this is most likely related to old trauma as well. 4. No acute fractures. Report Electronically Signed by: Michael Shapiro Report Electronically Signed on: 04/22/2015 04:09 PM | |
| | ---------------------------------------------------------------------------------------- | |
| | F/U Orthopedic prn | |

## Patient Name: BENNETT, TROY , DOB: 10/05/1976

Page 1 of 2

 **NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**

nyc.gov/hhc
**Correctional Health Services**

Insurance: Self Pay

**BENNETT, TROY**

NYSID : 02226479M   BookCase: 1411502136
Facility Code: OBCC  Housing Area: 1N
38 Y old Male, DOB: 10/05/1976
332 RUTLAND ROAD, 2B, 2B, BK; NY-11225

Appointment Facility: Otis Bantum Correctional Center

03/09/2015

Appointment Provider: Jean-Joseph Janvier, MD

**Current Medications**
Bactrim DS 800-160 MG Tablet 1 tablet - first dose now Twice a Day, stop date 03/11/2015
Ibuprofen 400 MG Tablet 1 tab - first dose now Three Times a Day, stop date 03/09/2015

**Allergies**
N.K.D.A.

**Reason for Appointment**
1. R Thumb Infected Laceration

**History of Present Illness**
VISIT COMPLEXITY SCALE:
    NON-INTAKE ACUITY
      Non-Intake Acuity Scale 4: Three or more Chronic Conditions addressed as in (3) OR Emergency response in the facility OR acutely ill patients requiring phone consultation with Urgi, specialist, phone call to community provider

**Vital Signs**

|  | BP |  |
|---|---|---|
| 108/67 | 03/09/2015 03:41:35 PM | Jean-Joseph Janvier |
|  | Pulse |  |
| 72 | 03/09/2015 03:41:35 PM | Jean-Joseph Janvier |
|  | RR |  |
| 14 | 03/09/2015 03:41:35 PM | Jean-Joseph Janvier |
|  | Temp |  |
| 97.5 | 03/09/2015 03:41:35 PM | Jean-Joseph Janvier |

**Examination**
General Examination:
    GENERAL APPEARANCE: no acute distress.
    HEENT: atraumatic.
    NECK: supple.
    HEART: regular, normal S1S2.
    LUNGS: clear to auscultation bilaterally.
    EXTREMITIES: Tender R Thumb healing & infected laceration in proximal phalynx with Stiches in place..

**Assessments**
1. HAND INJURY NOS - 959.4, Infected Laceration R Thumb/ Stiches in place

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: Jean-Joseph Janvier, MD   03/09/2015
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

https://chsricbpdlb.riepf.com/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterl...   10/1/2015

Treatment
1. HAND INJURY NOS
Start Ibuprofen Tablet, 400 MG, 2 tabs, Orally, Twice a Day, 4 days, Pharmacy, Refills 0
4 stiches removed from R Thumb infected laceration after cleanse with NS.Patient tolerated procedure without complication.Daily dressing ordered.Continue antibiotic as ordered.
Referral To:Wound Care Nursing    Wound Care
     Reason:Infected R Thumb Laceration

Disposition: General Population
Notes: RTC PRN

Appointment Provider: Jean-Joseph Janvier, MD



Electronically signed by Jean-Joseph Janvier MD on 03/09/2015 at 03:50 PM EDT
Sign off status: Completed

Otis Bantum Correctional Center
1600 Hazen Street
East Elmhurst, NY 11370
Tel: 718-546-6449
Fax:

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: Jean-Joseph Janvier, MD   03/09/2015
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)



**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**

n y c . g o v / h h c
**Correctional Health Services**

Insurance: Self Pay

**BENNETT, TROY**

NYSID: 02226479M  BookCase: 1411502136
Facility Code: BKDC Housing Area: 4UA
38 Y old Male, DOB: 10/05/1976
332 RUTLAND ROAD, 2B, 2B, BK, NY-11225

Appointment Facility: Brooklyn Detention Center

04/20/2015

Appointment Provider: Lesly Jean Gilles, MD

**Current Medications**
None

**Allergies**
N.K.D.A.

**Reason for Appointment**
1. right hand s/p ORIF and right thumb mcp s/p curt

**History of Present Illness**
Notes::
    Pt with right hand injury in multiple occasions he is s/p ORIF 2006 and had to removed the metal plate January by hand specialist and he got right thumb MCP joint extensor tendon injured a knife, prior to get arrested, he had received multiple dosage antibiotic and xray in hospital KC HC then was transferred to jail, the antibiotic and therapy was continued and sutures was removed during incarceration .He presented today with pain at the MCP joint pain ,mild deformity and decreased rom .No fever .
VISIT COMPLEXITY SCALE:
    NON-INTAKE ACUITY
      Non-Intake Acuity Scale 2: *Complicated sick call (problem requiring diagnostic evaluation, documented history, physical exam, specified follow up) OR One chronic condition addressed with components specified in (3)*

**Vital Signs**

| BP | | |
|---|---|---|
| 98/67 | 04/20/2015 07:31:25 PM | Lesly Jean Gilles |
| **Pulse** | | |
| 70 | 04/20/2015 07:31:25 PM | Lesly Jean Gilles |
| **RR** | | |
| 16 | 04/20/2015 07:31:25 PM | Lesly Jean Gilles |
| **Temp.** | | |
| 97.8 | 04/20/2015 07:31:25 PM | Lesly Jean Gilles |

**Examination**
General Examination:
    SKIN: hyperpigmented scar in extensor area skin..
    EXTREMITIES: pulses 2 plus bilaterally, right hand deformity at

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: Lesly Jean Gilles, MD   04/20/2015
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

secund carpal bon with keloid scar lonfgitudinal tender to touch and mild sweling, thumb mcp minor keloid scar anterolateral side the joint , sweeling tender and decrease rom, mostly in extention.Left hand thumb minor atrophy and no flexion ..

**Assessments**
1. HAND INJURY NOS- 959.4
2. Arthralgias - 714.9

**Treatment**
**1. Arthralgias**
Start Ibuprofen Tablet, 400 MG, 1 tab(first dose stat ), Orally, Every 12 Hours, 7 days, 14 Tablet
Diagnostic Imaging:Hand Right Ap, Oblique, Lateral (XRAY)

**Follow Up**
prn

Disposition: General Population

**Appointment Provider: Lesly Jean Gilles,MD**



Electronically signed by Lesly Jean Gilles on 04/20/2015 at 07:31 PM EDT

Sign off status: Completed

---

Brooklyn Detention Center
275 Atlantic Avenue
Brooklyn, NY 11201
Tel:
Fax:

---

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: Lesly Jean Gilles,MD   04/20/2015

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*



**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**

n y c . g o v / h h c
**Correctional Health Services**

Insurance: Self Pay

# BENNETT, TROY

NYSID: 02226479M   BookCase: 141150.2136
Facility Code: BKDC   Housing Area: 9 LD
38 Y old Male, DOB: 10/05/1976
332 RUTLAND ROAD, 2B, 2B, BK, NY-11225

Appointment Facility: Brooklyn Detention Center

08/04/2015

Appointment Provider: Iosif Shpits, MD

**Current Medications**
None

**Allergies**
N.K.D.A.

**Reason for Appointment**
1. Injury

**History of Present Illness**
TEMPLATES:

  Rikers Injury Report
  Patient c/o nasal pain, bleeding and swelling of the nose. He denied
LOC, dizziness or difficult to breath.
Injury Report:
  General
    Injury Report #: 227/
    Event Location: *Housing Area /*
    Intentionality: *Unintentional /*
    Cause: *inmate-on-inmate fight /*
    Verified Injury: *Physical evidence of injury /*
    Did the patient have a blow to the head? Yes /
    Did the patient ever lose consciousness? No /
    Was the patient ever dazed and confused after injury? *No /*
VISIT COMPLEXITY SCALE:
  NON-INTAKE ACUITY
  Non-Intake Acuity Scale *4: Three or more Chronic Conditions
addressed as in (3) OR Emergency response in the facility OR acutely
ill patients requiring phone consultation with Urgi, specialist, phone
call to community provider*

**Vital Signs**

| | BP | |
|---|---|---|
| 110/80 | 08/04/2015 09:47:06 PM | Iosif Shpits |
| | Pulse | |
| 92 | 08/04/2015 09:47:06 PM | Iosif Shpits |
| | RR | |
| 15 | 08/04/2015 09:47:06 PM | Iosif Shpits |
| | Temp | |
| | 08/04/2015 09:47:06 | |

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: Iosif Shpits, MD   08/04/2015
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*



**NEW YORK CITY
HEALTH AND
HOSPITALS
CORPORATION**

nyc.gov/hhc

**Correctional Health Services**

Insurance: Self Pay

**BENNETT, TROY**

NYSID: 02226479M  BookCase: 1411502136

Facility Code: BKDC  Housing Area: 9LD

38 Y old Male, DOB: 10/05/1976

332 RUTLAND ROAD, 2B, 2B, BK, NY-11225

Appointment Facility: West Facility

08/05/2015

Appointment Provider: PETER WACHTEL, DO

**Current Medications**
Ibuprofen 400 MG Tablet 2 tabs Twice a Day, stop date 08/08/2015

**Allergies**
N.K.D.A.

**Reason for Appointment**
1. S/P Injury

**History of Present Illness**
SICK CALL EVALUATION:
Pt stated he was assaulted by other inmates & was hit all over his body. Pt also stated he was punched in the face. Pt c/o headaches denies loc. Tetanus UTD: M. Jn-Charles RN.;
Dr.'s note: punched in face yesterday sustaining nose injury/ epistaxis; no emesis/ neck pain/ LOC/ visual changes/sob; also claims his dom. rt hand which has a plate in it from 2008 (for which he claims he was supposed to get removed) was injured yesterday while defending himself.

**Vital Signs**

| BP | | |
|---|---|---|
| 114/80 | 08/05/2015 11:35:19 AM | Martine Jean-Charles |
| **Pulse** | | |
| 66 | 08/05/2015 11:35:19 AM | Martine Jean-Charles |
| **RR** | | |
| 14 | 08/05/2015 11:35:19 AM | Martine Jean-Charles |
| **Temp** | | |
| 98.0 | 08/05/2015 11:35:19 AM | Martine Jean-Charles |

**Examination**
General Examination:
nontox; gcs-15; no sx Incr. ICP or basilar skull fx;no c-sp/ thoracoabd tender; PERRLA,EOMI,no hyphema/ proptosis/ photophobia/ trismus/ malocclusion;+nasal bridge flattening w/o deviation/ epistaxis/ septal hematoma; +left infraorb. edema/ ecchymosis w/o crepitus/ sq air/ tender; EXT:+right hand dorsum surg scar w/o deformity/ edema/ ecchymosis/ tender/ ROM deficits; CN2-12/ cerebellar intact; nasal xr+fx.

Patient: BENNETT, TROY  DOB: 10/05/1976  Progress Note: PETER WACHTEL, DO  08/05/2015
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

https://chsricbpdlb.riepf.com/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterI...  10/1/2015

**Assessments**
1. HAND INJURY NOS - 959.4
2. Closed fracture of nasal bones - 802.0

**Treatment**
1. HAND INJURY NOS
Start Tylenol Tablet, 325 MG, 3 tabs, Orally, stat, 0 days, RN-DOT
Diagnostic Imaging:Hand Right Ap, Oblique, Lateral (XRAY)
consented.
Referral To:ENT (REF) Bellevue   ENT
        Reason:nasal fx

**Procedures**
pt given gauze stack w/ demonstration of how to squeeze pressure
should bleeding recur; hand xr neg fx/ plate intact; pt can resolve plate
issue of removal upon release since it's been there for 7yrs.

**Follow Up**
bh ent referral made (Reason: wf ent w/ o CT if needed for decision to
repair)

Disposition: General Population
Notes: epistaxis precautions; head injury instructions

**Addendum:**
08/05/2015 01:40 PM Jean-Charles, Martine > Pt was medicated
with Tylenol 975mg po stat. Pt educated.

**Appointment Provider: PETER WACHTEL, DO**



Electronically signed by Peter Wachtel on 08/05/2015 at
12:25 PM EDT

Sign off status: Completed

---

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: PETER WACHTEL, DO   08/05/2015
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)



**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**

n y c . g o v / h h c

**Correctional Health Services**

Insurance: Self Pay

## BENNETT, TROY

NYSID: 02226479M   BookCase: 1411502136

Facility Code: OBCC   Housing Area: 2U

38 Y old Male, DOB: 10/05/1976

332 RUTLAND ROAD, 2B, 2B, BK, NY-11225

Appointment Facility: Otis Bantum Correctional Center

08/18/2015

Appointment Provider: Lygia D Sa, MD

**Current Medications**
Ibuprofen 400 MG Tablet 1 tab Twice a Day, stop date 08/18/2015

**Past Medical History**
Pain in the nose

**Allergies**
N.K.D.A.

**Reason for Appointment**
1. I need pain medication for my nose
2. Feels like his nose is not straight like it was

**History of Present Illness**
VISIT COMPLEXITY SCALE:
   NON-INTAKE ACUITY
   Non-Intake Acuity Scale 2: Complicated sick call (problem requiring diagnostic evaluation, documented history, physical exam, specified follow up) OR One chronic condition addressed with components specified in (3)

**Vital Signs**

| BP | | |
|---|---|---|
| 116/72 | 08/18/2015 12:01:01 PM | Lygia D Sa |
| **Pulse** | | |
| 76 | 08/18/2015 12:01:01 PM | Lygia D Sa |
| **RR** | | |
| 14 | 08/18/2015 12:01:01 PM | Lygia D Sa |
| **Temp** | | |
| 98.1 | 08/18/2015 12:01:01 PM | Lygia D Sa |

**Examination**
General Examination:
   GENERAL APPEARANCE: well-appearing, no acute distress.
   HEENT: HEAD:-, normocephalic, EYES:-, PERRLA, EOMI, NOSE:-, deviated nasal septum, THROAT:-, THROAT:-.
   HEART: RATE:-, regular, RHYTHM:-, regular, HEART SOUNDS:-, normal S1S2, MURMURS:-, none.
   LUNGS: clear to auscultation, no wheezes/rhonchi/rales.
   ABDOMEN: soft, NT/ND, BS present, no masses palpated, no guarding or rigidity, no hepatosplenomegaly.

**Assessments.**
1. Closed fracture of nasal bones - 802.0

**Treatment**

1. Closed fracture of nasal bones

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: Lygia D Sa, MD   08/18/2015
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*



**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**

nyc.gov/hhc

**Correctional Health Services**

Insurance: Self Pay

# BENNETT, TROY

NYSID: 02226479M   BookCase: 1411502136
Facility Code: OBCC Housing Area: 2U
38 Y old Male, DOB: 10/05/1976
332 RUTLAND ROAD, 2B, 2B, BK, NY-11225

Appointment Facility: Otis Bantum Correctional Center

08/14/2015

Appointment Provider: Leon Scrimmager, MD

**Current Medications**
None

**Allergies**
N.K.D.A.

**Reason for Appointment**
1. Medication refill

**History of Present Illness**
Notes::
    Requesting pain medication refill for nasal fracture.
VISIT COMPLEXITY SCALE:
    NON-INTAKE ACUITY
    Non-Intake Acuity Scale *1: Uncomplicated sick call (med renewal, referral request, single Chief Complaint) OR refusal visit*

**Vital Signs**

| BP | | |
|---|---|---|
| 115/75 | 08/14/2015 09:26:06 PM | Leon Scrimmager |
| Pulse | | |
| 76 | 08/14/2015 09:26:06 PM | Leon Scrimmager |
| RR | | |
| 14 | 08/14/2015 09:26:06 PM | Leon Scrimmager |
| Temp | | |
| 98.2 | 08/14/2015 09:26:06 PM | Leon Scrimmager |

**Assessments**
1. Closed fracture of nasal bones - 802.0

**Treatment**
1. Closed fracture of nasal bones
Start Ibuprofen Tablet, 400 MG, 1 tab, Orally, Twice a Day, 4 days, Pharmacy

2. Others
Start Ibuprofen Tablet, 400 MG, 800 mg, Orally, Stat, 0 days, RN-DOT

Disposition: General Population

Patient: BENNETT, TROY   DOB: 10/05/1976   Progress Note: Leon Scrimmager, MD   08/14/2015
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*